Originally Filed:  August 9, 2021
Redacted Version Filed:  August 12, 2021

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AZURITY PHARMACEUTICALS, INC.,           )
                                          )          C.A. No. 19-2100 (LPS)
         *Plaintiff*,                     )
                                          )
    v.                                    )
                                          )
ALKEM LABORATORIES LTD.                    )
                                          )
         *Defendant*.                      )          REDACTED - PUBLIC VERSION
                                          )

**JOINT CLAIM CONSTRUCTION BRIEF
FOR U.S. PATENT NOS. 10,772,868; 10,786,482; AND 10,918,621**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Megan E. Dellinger (#5739)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mdellinger@morrisnichols.com

*Attorneys for Plaintiff Azurity
Pharmaceuticals, Inc.*

MORRIS JAMES LLP
Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6800
kdorsney@morrisjames.com
chitch@morrisjames.com

*Attorneys for Defendant Alkem Laboratories
Ltd.*

August 9, 2021

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ................................................................................................ 1

    A.    Azurity's Opening Position.......................................................................... 1

        1.    Procedural History and the Claim Construction Patents............................ 1

        2.    Technology Background ........................................................................ 1

        3.    Legal Standard for Claim Construction ...................................................... 2

        4.    Person of Ordinary Skill in the Art ............................................................ 3

    B.    Alkem's Answering Position ....................................................................... 4

        1.    Procedural History ................................................................................ 4

        2.    Background of the Technology................................................................ 4

        3.    Defendants' legal standard for claim construction ................................... 5

        4.    Person of Ordinary Skill in the Art ............................................................ 5

    C.    Azurity's Reply Position.............................................................................. 5

    D.    Alkem's Sur-Reply Position ....................................................................... 6

II.    AGREED UPON CONSTRUCTIONS ................................................................ 6

III.    DISPUTED CONSTRUCTIONS ........................................................................ 7

    A.    "A Buffer" ................................................................................................... 7

        1.    Azurity's Opening Position......................................................................... 8

            a)    As a general rule, "a" as used in a patent claim means "one
                or more" ............................................................................. 8

            b)    Intrinsic evidence is consistent with the well-known
                meaning of "a" and contradicts Alkem's proposed
                construction ....................................................................... 9

        2.    Alkem's Answering Position ................................................................. 10

            a)    The intrinsic evidence demonstrates the patentee
                understood "a" to be limited to "one buffer," not "one or
                more buffers." ..........................................................................11

                i. The patentee disavowed the claim scope of "more than one"
                by replacing "comprising" with "consisting essentially of." .. 11

                ii. Only Alkem's construction provides sufficient guidance to a
                POSA as to the scope of the concentration limitations........... 14

                iii. Nothing in the intrinsic evidence would teach a POSA that
                the claimed inventions could use more than one buffer. ........ 15

iv. The plaintiff's reliance on the "Certain Definitions" portion of the specification is unavailing............................................ 17

b) The general rule that "a" means "one or more" in a patent claim is not applicable to the claims here. .................................... 17

i. ......... The general rule cited by plaintiffs only applies with the "comprising" transition phrase. ................................................ 17

ii. ..... Even when the transition phrase "comprising" is used, the "rule" is still applied considering the intrinsic evidence. ....... 18

3. Azurity's Reply Position........................................................................ 19

a) Alkem's prosecution disclaimer argument fails to meet the applicable legal standard ..................................................... 20

b) Azurity's construction provides sufficient guidance to a POSA when calculating the buffer concentration in the claimed formulation ...................................................................... 25

c) Alkem's remaining arguments concerning the intrinsic evidence are unavailing....................................................... 26

d) The well-established rule that "a" or "an" means "one or more" is controlling here ...................................................... 27

4. Alkem's Sur-Reply Position .................................................................. 28

a) Alkem set forth sufficient evidence to prove Azurity disclaimed more than one buffer........................................... 28

b) Alkem's construction is the only one that could sufficiently inform any POSA of the scope of the buffer limitation............... 32

c) The patentee understood a "citrate/phosphate buffer" as a single buffer, not a combination of buffers................................. 32

d) The "rule" regarding "a" or "an" is not applicable here. .............. 33

B. "A Buffer to Maintain the pH" ........................................................................ 34

1. Azurity's Opening Position.................................................................... 34

2. Alkem's Answering Position .................................................................. 35

a) The prosecution history and specification do not suggest the possibility of multiple buffers. .................................................. 35

3. Azurity's Reply Position........................................................................ 35

4. Alkem's Sur-Reply Position .................................................................. 36

C. "A Citrate Buffer . . ." ..................................................................................... 36

1. Azurity's Opening Position.................................................................... 36

2. Alkem's Answering Position .................................................................. 38

a)     The prosecution history and specification indicate that "a" means "one" in this term...........................................................38

b)     As used during the '868 patent's prosecution, "citrate buffer" describes a buffer comprising citric acid.........................38

c)     The '868 patent claims' use of "citrate" buffer and the specification further demonstrate that sodium citrate is not necessarily included in a "citrate buffer."....................................39

3.     Azurity's Reply Position...................................................................41

4.     Alkem's Sur-Reply Position ............................................................43

D.     "A Mixture of Citric Acid and Sodium Citrate . . ." ............................................44

1.     Azurity's Opening Position...............................................................44

2.     Alkem's Answering Position .............................................................45

a)     The citric acid and sodium citrate in the buffer are distinct from the formulation's other components.....................................45

3.     Azurity's Reply Position...................................................................46

4.     Alkem's Sur-Reply Position ............................................................47

E.     "Consisting Essentially Of" .........................................................................48

1.     Azurity's Opening Position...............................................................48

2.     Alkem's Answering Position .............................................................49

a)     The prosecution history of the patents-in-suit as a whole demonstrate the patentee's understanding of "consisting essentially of" to mean "including, exclusively."........................49

3.     Azurity's Reply Position...................................................................50

4.     Alkem's Sur-Reply Position ............................................................51

IV.     CONCLUSION..............................................................................................51

A.     Azurity's Position ...........................................................................51

B.     Alkem's Position.............................................................................51

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*01 Communique Lab., Inc. v. LogMeIn, Inc.*,
　687 F.3d 1292 (Fed. Cir. 2012)................................................................8, 18, 19, 23, 27

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
　314 F.3d 1313 (Fed. Cir. 2003)............................................................13, 27, 28, 47, 48

*Amgen Inc. v. Hospira, Inc.*,
　232 F.Supp.3d 621 (D. Del. 2017).......................................................................11, 12, 28

*Andersen Corp. v. Fiber Composites, LLC*,
　474 F.3d 1361 (Fed. Cir. 2007)................................................................................. *passim*

*Baldwin Graphics Sys., Inc. v. Siebert, Inc.*,
　512 F.3d 1338 (Fed. Cir. 2008)........................................................................18, 19, 23, 27

*Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*,
　262 F.3d 1258 (Fed. Cir. 2001)...............................................................................36

*Bristol-Myers Squibb Co. v. Aurobindo Pharma USA Inc.*, No. 17-374-LPS,
　2018 WL 5077895 (D. Del. Oct. 18, 2018) .......................................................45

*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
　388 F.3d 858 (Fed. Cir. 2004).........................................................................43, 44

*Callicrate v. New Age Indus. Corp.*, No. 04-4008-JAR,
　2005 WL 1027095 (D. Kan. Apr. 27, 2005)........................................................24, 31

*Cat Tech LLC v. TubeMaster, Inc.*,
　528 F.3d 871 (Fed. Cir. 2008).......................................................................................3

*Clear with Computs., LLC v. AGCO Corp.*, No. 6:12-CV-622,
　2014 WL 2700376 (E.D. Tex. June 13, 2014)................................................37

*Eisai Co., Ltd. v. Glenmark Pharm., Ltd.*, No. 13-1279-LPS,
　2015 WL 1228958 (D. Del. Mar. 17, 2015) .......................................................37

*Elkay Mfg. Co. v. EBCO Mfg. Co.*,
　192 F.3d 973 (Fed. Cir. 1999).......................................................................30

*Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*,
　815 F.3d 1314 (Fed. Cir. 2016).......................................................................5

*Fenner Invs., Ltd. v. Cellco P'ship*,
　778 F.3d 1320 (Fed. Cir. 2015)....................................................................41

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
　535 U.S. 722 (2002)...................................................................................30

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
    755 F.3d 1367 (Fed. Cir. 2014) ........................................................................................ 3

*Hockerson-Halberstadt, Inc.* v. *Avia Grp. Int'l, Inc.*,
    222 F.3d 951 (Fed. Cir. 2000) .......................................................................................... 3

*In re Herz*,
    537 F.2d 549 (C.C.P.A. 1976) ..................................................................................... 48, 50

*In re Hitachi Metals, Ltd.*,
    603 F. App'x 976 (Fed. Cir. 2015) .............................................................................. 48, 50

*Ingenio, Filliale De Loto-Quebec, Inc. v. Gamelogic, Inc.*,
    445 F.Supp.2d 443 (D. Del. 2006) .............................................................................. 19, 23

*Intervet Inc. v. Boehringer Ingelheim Vetmedica, Inc.*, No. 11-595-LPS,
    2012 WL 6097073 (D. Del. Dec. 7, 2012) ..........................................................9, 19, 23, 28

*Jack Guttman, Inc. v. Kopykake Enterprises, Inc.*,
    302 F.3d 1352 (Fed. Cir. 2002) ................................................................................... 17, 27

*K-2 Corp. v. Salomon S.A.*,
    191 F.3d 1356 (Fed. Cir. 1999) ........................................................................................ 3

*KCJ Corp. v. Kinetic Concepts, Inc.*,
    223 F.3d 1351 (Fed. Cir. 2000) ....................................................................................8, 10

*Kraft Foods, Inc. v. Int'l Trading Co.*,
    203 F.3d 1362 (Fed. Cir. 2000) ...................................................................................... 40

*Laryngeal Mask Co. Ltd. v. Ambu*,
    618 F.3d 1367 (Fed. Cir. 2010) ...................................................................................... 16

*Markman v. Westview Instruments, Inc.*,
    517 U.S. 370 (1996) ........................................................................................................ 2

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995) .........................................................................................3, 5

*Mass. Inst. of Tech. v. Shire Pharm., Inc.*,
    839 F.3d 1111 (Fed. Cir. 2016) ............................................................................20, 21, 46

*Mayne Pharma Int'l Pty Ltd. v. Merck & Co., Inc.*, No. 15-438-LPS,
    2016 WL 7441069 (D. Del. Dec. 27, 2016), *aff'd sub nom. Mayne Pharma
    Int'l Pty. Ltd. v. Merck Sharp & Dohme Corp.*, 927 F.3d 1232 (Fed. Cir.
    2019) ......................................................................................................................... 48, 49

*Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc.*,
    395 F.3d 1364 (Fed. Cir. 2005) ...................................................................................... 39

*Norian Corp. v. Stryker Corp.*,
    432 F.3d 1356 (Fed. Cir. 2005) ............................................................................18, 19, 28

*O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008)..................................................................................5

*Omega Eng'g, Inc. v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003)...........................................................................20, 24

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc)............................................... *passim*

*PPG Indus. v. Guardian Indus. Corp.*,
    156 F.3d 1351 (Fed. Cir. 1998)...........................................................................11, 48

*Prostrakan, Inc. v. Actavis Labs. UT, Inc.*, No. 2-16-CV-0044-RWS-RSP,
    2017 WL 3028876 (E.D. Tex. July 15, 2017), *aff'd*, 787 Fed. Appx. 757
    (Fed. Cir. 2019)..................................................................................................28

*Purdue Pharma Prods. L.P. v. Par Pharmaceutical, Inc.*,
    584 F.Supp.2d 664 (D. Del. 2008)....................................................................17

*Rehco LLC v. Spin Master, Ltd.*,
    759 F. App'x 944 (Fed. Cir. 2019) ....................................................................8, 9

*SanDisk Corp. v. Kingston Tech. Co.*,
    695 F.3d 1348 (Fed. Cir. 2012)..........................................................................8

*Scanner Techs. Corp. v. ICOS Vision Sys. Corp., N.V.*,
    365 F.3d 1299 (Fed. Cir. 2004)..........................................................................17

*Sorensen v. ITC*,
    427 F.3d 1375 (Fed. Cir. 2005)..........................................................................46

*Spectrum Int'l v. Sterilite Corp.*,
    164 F.3d 1372 (Fed. Cir. 1988)...........................................................................12, 16

*Spectrum Pharma., Inc. v. Innopharma, Inc.*, No. 12-260-RGA-CJB,
    2014 WL 3365684 (D. Del. July 3, 2014) ........................................................20

*SunPower Corp. v. PanelClaw, Inc.*, No. 12-1633-MPT,
    2016 WL 4578324 (D. Del. Aug. 31, 2016) .....................................................9

*Texas Instruments Inc. v. U.S. Intern. Trade Com'n*,
    988 F.2d 1165 (Fed. Cir. 1993)..........................................................................39, 42

*Thorner v. Sony Computer Entertainment America LLC*,
    669 F.3d 1362 (Fed. Cir. 2012)..........................................................................17

*UCB, Inc. v. Actavis Labs. UT, Inc.*, No. 19-474-LPS,
    2020 WL 599446 (D. Del. Feb. 7, 2020) ........................................................37

*Unimed Pharm., LLC v. Perrigo Co.*, No. 13-236-RGA,
    2015 WL 1094601 (D. Del. Mar. 11, 2015) .....................................................49

*Vas-Cath, Inc. v. Mahurkar*,
    935 F.2d 1555 (Fed. Cir. 1991)..........................................................................16

*Vitronics Corp. v. Conceptronic, Inc.,*
    90 F.3d 1576 (Fed. Cir. 1996).................................................................2, 3

*Xerox Corp. v. Google Inc.,*
    801 F. Supp. 2d 293 (D. Del. 2011).................................................................9

*York Prods., Inc. v. Central Tractor Farm & Fam. Ctr.,*
    99 F.3d 1568 (Fed. Cir. 1996).................................................................13

**MISCELLANEOUS**

MPEP § 2111.03 .................................................................48, 50

## TABLE OF ABBREVIATIONS

| ABBREVIATION | DESCRIPTION |
|---|---|
| '008 patent | U.S. Patent No. 9,669,008 |
| '442 patent | U.S. Patent No. 9,808,442 |
| '745 patent | U.S. Patent No. 10,039,745 |
| '987 patent | U.S. Patent No. 10,154,987 |
| '868 patent | U.S. Patent No. 10,772,868 |
| '482 patent | U.S. Patent No. 10,786,482 |
| '621 patent | U.S. Patent No. 10,918,621 |
| ACE | Angiotensin-converting enzyme |
| Alkem | Defendant Alkem Laboratories Ltd. |
| [Alkem's] ANDA Product | Product that is the subject of Alkem's ANDA No. 213714 |
| ANDA | Abbreviated New Drug Application |
| Appx | Joint Appendix for Claim Construction |
| Asserted Patents | Collectively, the '008 patent, '442 patent, '745 patent, '987 patent, '868 patent, '482 patent, and '621 patent |
| Azurity | Plaintiff Azurity Pharmaceuticals, Inc. |
| Claim Construction Patents | Collectively, the '868 patent, '482 patent, and '621 patent |
| Epaned® | Product that is the subject of Azurity's NDA No. 208686 |
| FDA | U.S. Food & Drug Administration |
| JCCC | Joint Claim Construction Chart |
| Mosher Decl. | Declaration of Dr. Mosher from prosecution history |
| MPEP | Manual of Patent Examining Procedure |
| NDA | New Drug Application |
| OA | Office action from prosecution history |
| POSA | Person of ordinary skill in the art |

** Unless noted otherwise, all emphases added, all internal citations and quotations omitted, and all "D.I." citations are to the docket in C.A. No. 19-2100.

## I.      INTRODUCTION

### A.      Azurity's Opening Position

#### 1.      Procedural History and the Claim Construction Patents

This patent infringement case arises under the Hatch-Waxman Act and from Alkem's filing of ANDA No. 213714 seeking FDA approval to market a generic version of Azurity's Epaned®, the subject of NDA No. 208686, prior to the expiration of the '008, '442, '987, '745, '868, '482, and '621 patents.[1]  Azurity[2] filed a complaint against Alkem on November 5, 2019 with respect to the '008, '442, '987, and '745 patents, which was amended on April 13, 2021 to add the '868, '482, and '621 patents.  D.I. 1; D.I. 39.  The parties submitted a JCCC on March 4, 2021 as to the '008, '442, '987, and '745 patents; there were no disputed terms or constructions.  D.I. 32.  On May 26, 2021, the parties submitted a JCCC as to the '868, '482, and '621 patents —the Claim Construction Patents—with five (5) disputed terms, all proposed by Alkem.  D.I. 51; D.I. 51-1, Ex. B.  The Claim Construction Patents are directed to stable oral enalapril liquid formulations having certain claimed components that are stable at about 5±3°C for at least 12 months.

#### 2.      Technology Background

Enalapril is a prodrug belonging to the ACE inhibitor drug class that works on the renin-angiotensin-aldosterone system, which is responsible for the regulation of blood pressure. Appx35, '482 patent at 1:49-50, 1:44-52.  Upon administration, enalapril is rapidly hydrolyzed in the liver and converted into its active metabolite, enalaprilat, which works to reduce blood pressure and treat hypertension, heart failure, and asymptomatic left ventricular dysfunction.  *Id.* at 2:14-16.

---

[1]  The '008, '442, '987, '745, '868, '482, and '621 patents share a common specification.  For convenience, citations generally are made to the '482 patent, but include identical passages in the '008, '442, '987, '745, '868, and '621 patents.

[2]  Azurity was substituted for Silvergate Pharmaceuticals, Inc. on June 11, 2021 (D.I. 59).

Enalapril was first marketed in 1985 as a solid oral tablet, Vasotec®.  *Id.* at 2:12-13.  However, underserved pediatric and elderly populations, who have an increased risk of choking, often have difficulty ingesting and swallowing solid dosage tablets.  Appx37, '482 patent at 5:24-32.  In view of this, compounding pharmacists would crush enalapril tablets into a powder via mortar and pestle, then dissolve the powder in a liquid for administration.  *Id.* at 5:41-44.  This method had significant drawbacks, including large variability in dosage, incomplete solubilizing of enalapril powder in liquid, rapid instability, and cross-contamination.  *Id.* at 5:45-53.  In an effort to reduce issues associated with compounding enalapril tablets, Azurity developed Epaned® Kit, a powder composition for reconstitution as an oral liquid.  Appx35, '482 patent at 2:12-14; Appx37, '482 patent at 5:54-56.  While Epaned® Kit was an improvement over compounding, it still required the pharmacist to mix the powder and diluent.  Appx37, '482 patent at 5:56-60.  Once reconstituted, the liquid formulation was only stable for 60 days.

To address to these lingering flaws, Azurity invested in research to develop Epaned®—the first FDA-approved, ready-to-use oral enalapril formulation that requires no extra steps or manipulation prior to administration; includes minimal excipients; and is shelf stable far longer than prior enalapril liquid formulations.  Appx37, '482 patent at 5:60-65.  The Claim Construction Patents cover formulations of stable oral enalapril formulations that resulted from this research.

### 3.  Legal Standard for Claim Construction

The claims of a patent define the scope of an invention, and claim construction is a question of law exclusively within the province of the court.  *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 373, 391 (1996).  Claims are to be interpreted in view of the intrinsic record: the claim language, the specification, and the prosecution history.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc); *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576,

1582 (Fed. Cir. 1996); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979-81 (Fed. Cir. 1995).

Claim terms should be given their ordinary and customary meaning as understood by a person of ordinary skill in the art at the time of the invention. *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 884 (Fed. Cir. 2008) (*citing Phillips,* 415 F.3d at 1313-14); *see also Hill-Rom Servs., Inc. v. Stryker Corp.,* 755 F.3d 1367, 1371 (Fed. Cir. 2014).  A party seeking to alter the ordinary and customary meaning of a clear claim term must demonstrate "why such an alteration is required." *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1363 (Fed. Cir. 1999).

Courts may also consider extrinsic evidence, such as expert testimony, dictionaries, and technical treatises and articles.  However, "[i]f the meaning of a claim is unambiguous from the intrinsic evidence, then a court may not rely on extrinsic evidence for purposes of claim construction." *Hockerson-Halberstadt, Inc.* v. *Avia Grp. Int'l, Inc.,* 222 F.3d 951, 955 (Fed. Cir. 2000); *see also Vitronics,* 90 F.3d at 1584.

### 4.      Person of Ordinary Skill in the Art

A POSA in the relevant field as of March 18, 2016 would be a person that has: (i)  a Ph.D. in formulation-relevant pharmaceutical science, chemistry, or a similar subject, with minimal post-degree experience in formulating pharmaceutical products; or (ii) at a minimum a bachelor's degree in pharmacy, pharmaceutical science, chemistry or a similar subject, with at least five years of post-degree practical experience in formulating pharmaceutical products.  A POSA would also have experience with pharmaceutical excipients as applied to their selection and use in drug formulations.

### B.    Alkem's Answering Position

#### 1.    Procedural History

This Hatch-Waxman Act case stems from Alkem Laboratories Ltd.'s ("Alkem") filing of ANDA No. 213714 and the notification letter to Azurity Pharmaceuticals, Inc. ("Azurity") (formerly known as "Silvergate Pharmaceuticals, Inc." ("Silvergate")) dated September 23, 2019, seeking FDA approval for a drug product that is bioequivalent to Azurity's Epaned® product. (D.I. 9, at 9). Azurity filed a complaint for patent infringement on November 5, 2019, asserting Patent Nos. 9,669,008 ("008 patent"), 9,808,442 ("The '442 patent"), 10,039,745 ("the '745 patent"), and 10,154,987 ("the '987 patent"). *Id.* Azurity and Alkem did not submit any disputed terms for construction for these patents. (D.I. 32). Azurity amended its complaint on April 13, 2021 to add three new patents: Patent Nos. 10,772,868 ("the '868 patent"), 10,786,482 ("the '482 patent"), and 10,918,621 ("the '621 patent). (D.I. 39). The three patents added by amendment share a common specification with the four originally asserted patents. (D.I. 51). On May 26, 2021 the parties submitted a Joint Claim Construction Chart as to these three patents, with five disputed terms. *Id.*

#### 2.    Background of the Technology

Enalapril was approved by the FDA in 1985 and was originally sold as a tablet under the Vasotec® name. (Appx7, 2:11-13). The demand for the product spread to certain patient groups that have difficulty swallowing tablets, such as children and the elderly. (Appx9, 5:24-40). To address this issue, pharmacists began exploring the idea of a liquid formulation that these patients could ingest. (*Id.*, 5:41-53).  In 2016, Azurity began filing patent applications directed to oral liquid formulations of enalapril, with its first patent issuing on June 6, 2017. (Appx7, 1:6-18). Alkem notified Azurity by letter dated September 23, 2019 that it had submitted ANDA No. 213714 to the FDA seeking approval for a drug product that is bioequivalent to Azurity's Epaned® product. (D.I.9, at 9).

4

### 3.     Defendants' legal standard for claim construction

The Federal Circuit has held that "[w]hen the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*, 815 F.3d 1314, 1318 (Fed. Cir. 2016) (quoting *O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008)). "A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." *Id.* (quoting *O2 Micro*, 52 F.3d at 1361).

In addition to the specification, a court "should also consider the patent's prosecution history, if it is in evidence." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996)."[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (*en banc*).

### 4.     Person of Ordinary Skill in the Art

A POSA in this field would have a Ph.D in pharmacy, pharmaceutical science, chemistry, or a similar subject related to formulations, with at least a few years of experience with pharmaceutical formulation. A POSA may also have a minimum of a bachelor's degree in pharmacy, chemistry, or a similar subject, but with a commensurate increase in experience formulating pharmaceutical products.

### C.     Azurity's Reply Position

Alkem's arguments ignore well-established case law and are at odds with the intrinsic evidence.  Their constructions urge the Court to improperly narrow the disputed terms based on the alleged disavowal of claim scope during prosecution.  This assertion of prosecution disclaimer

fails at least because the Applicant's statements during prosecution—statements made in a parent application regarding rejections unconnected to the claim language here—do not relate to the alleged disclaimer here. Alkem also fails to cite any intrinsic evidence that would cause a POSA to understand any of the disputed terms by Alkem's narrow constructions. Instead, a POSA would construe the terms by the constructions set forth by Azurity, as these are in harmony with not only intrinsic evidence, but also the considerable case law on the subject. Therefore, Azurity respectfully asks the Court to adopt its proposed constructions.

### D.    Alkem's Sur-Reply Position

Alkem's constructions best comport with the prosecution history and the intent of the patentee when drafting the claims. Azurity mischaracterizes or misconstrues Alkem's constructions and asserts that Alkem has not cited sufficient evidence to support its position. As set forth below and in Alkem's answering brief, Alkem has submitted more than enough evidence for the Court to construe the terms in line with Alkem's proposals. Azurity relies heavily on how the terms are traditionally construed as opposed to how the examiner and patentee intended the terms to be understood during prosecution. As such, Alkem respectfully requests the Court to adopt its proposed constructions.

## II.    AGREED UPON CONSTRUCTIONS

The parties agreed to construe the claim term "about" as used in the Claim Construction Patents to mean "approximately." D.I. 51-1, Ex. A. The parties agreed to defer indefiniteness arguments for trial and not to address them as part of these claim construction proceedings. D.I. 51.

| Claim Term | Corresponding Claims | Agreed-Upon Construction |
|---|---|---|
| "about" | '868 patent, claims 1, 8-14, 21-26, 28;<br>'482 patent, claims 1, 7-14, 20-28;<br>'621 patent, claims 1, 5-8, 13-19, 21-24, 27-30 | "approximately" |

## III.    DISPUTED CONSTRUCTIONS

The following claim terms—all identified by Alkem—are in dispute.  D.I. 51-1, Ex. B.

| Claim Term | Azurity's Proposed Construction | Alkem's Proposed Construction |
|---|---|---|
| **"a buffer"**<br>'868 patent, claims 1, 13, 14;<br>'482 patent, claims 1, 13, 14;<br>'621 patent, claims 1, 19, 30 | "one or more buffers" | "one buffer" |
| **"a buffer to maintain the pH"**<br>'868 patent, claims 1, 13, 14;<br>'621 patent, claims 1, 19, 30 | "one or more buffers to maintain the pH" | "one buffer that maintains the pH" |
| **"a citrate buffer *[to maintain the pH about 4.5 or below comprising citric acid and sodium citrate]*"**<br>'868 patent, claim 26 | No construction needed.<br><br>To the extent a construction is needed, plain and ordinary meaning. | "one buffer comprising citric acid" |
| **"*[a buffer comprising]* a mixture of citric acid and sodium citrate*[, wherein the buffer is present at a concentration between about 5 mM and about 20 mM in the oral liquid formulation]*"**<br>'482 patent, claims 1, 13, 14 | No construction needed.<br><br>To the extent a construction is needed, plain and ordinary meaning. | "a combination of citric acid and sodium citrate distinct from the formulation's other components" |
| **"consisting essentially of"**<br>'868 patent, claims 1, 13, 14, 26;<br>'621 patent, claims 1, 19, 30 | Plain and ordinary meaning. | "including, exclusively," |

### A.    "A Buffer"

| Disputed Claim Term | Azurity's Construction | Alkem's Construction |
|---|---|---|
| **"a buffer"** | "one or more buffers" | "one buffer" |

| Disputed Claim Term | Azurity's Construction | Alkem's Construction |
|---|---|---|
| '868 patent, claims 1, 13, 14; [3], [4]<br>'482 patent, claims 1, 13, 14;<br>'621 patent, claims 1, 19, 30 | | |

### 1.     Azurity's Opening Position

Azurity's proposed construction is consistent with the express definition of "a" in the specification and with Federal Circuit case law regarding the plain and ordinary meaning of "a" in the claim term "a buffer," and therefore should be adopted.

### a)     As a general rule, "a" as used in a patent claim means "one or more"

As an initial matter, it is well-established Federal Circuit law that the plain and ordinary meaning of "a" or "an" in a patent claim is "one or more." *E.g.*, *SanDisk Corp. v. Kingston Tech. Co.*, 695 F.3d 1348, 1361 (Fed. Cir. 2012); *01 Communique Lab., Inc. v. LogMeIn, Inc.*, 687 F.3d 1292, 1297 (Fed. Cir. 2012) (noting well-established precedent that the words "a" or "an" in a patent claim carry the meaning of "one or more"); *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1357 (Fed. Cir. 2000) (explaining that "under the general rules of claim construction, this court presumes the customary meaning of 'a' – one or more," and thus "a … continuous … chamber" covers "one or more continuous chambers"); *Rehco LLC v. Spin Master, Ltd.*, 759 F. App'x 944, 949-50 (Fed. Cir. 2019) (finding district court erred in construing "a signal" to mean "a single signal . . . and not multiple signals" because "[c]onsistent with the general rule governing

---

[3] Independent claim 26 of the '868 patent recites: "(ii) a citrate buffer to maintain the pH about 4.5 or below . . ." and is addressed in Section III.C *infra*.

[4] The term "a buffer" also appears in dependent claim 30 of the '868 patent: "The stable oral liquid formulation of claim 1, wherein the buffer comprises ***a buffer*** selected from a citrate, a phosphate, a citrate/phosphate, an acetate, a tartrate, a lactate, a glycinate, and an amino acid buffer."  Alkem did not identify the '868 patent, claim 30 as one of the corresponding claims for "a buffer," and Azurity does not address that claim here.  Azurity reserves the right to respond in its reply brief based on any arguments made by Alkem.

the words 'a' or 'an,' we construe 'a signal' to mean 'one or more signals.'"); *Xerox Corp. v. Google Inc.*, 801 F. Supp. 2d 293, 299 (D. Del. 2011) (construing "all or part of a document in electronic form" to mean "all or part of one or more documents"); *SunPower Corp. v. PanelClaw, Inc.*, No. 12-1633-MPT, 2016 WL 4578324, at *3 (D. Del. Aug. 31, 2016) (adopting plaintiff's proposed constructions because nothing demonstrated a necessity to deviate from the rule that "a" or "an" means "one or more"); *Intervet Inc. v. Boehringer Ingelheim Vetmedica, Inc.*, No. 11-595-LPS, 2012 WL 6097073, at *3 (D. Del. Dec. 7, 2012) (defendant's argument that "a mammalian host cell" means only a single type of host cell improperly imported limitations into the claim given that the word "a" is generally understood to mean "one or more").  Thus, legal precedent and the canons of claim construction support Azurity's construction of "a buffer" to mean "one or more buffers."

> **b)**   **Intrinsic evidence is consistent with the well-known meaning of "a" and contradicts Alkem's proposed construction**

Second, the common specification of the patents in suit (consistent with Federal Circuit law) explicitly defines "a" in a paragraph under the heading "Certain Definitions" as follows:

> As used herein and in the appended claims, the ***singular forms "a", "an", and "the" include plural reference*** unless the context clearly dictates otherwise.  Thus, for example, ***reference to "an excipient" is a reference to one or more excipients*** and equivalents thereof known to those skilled in the art, and so forth.

Appx49, '482 patent at 29:20-25.  Here, there is no context that dictates that the term "a buffer" should be construed as a single buffer.  Accordingly, "a buffer" should be construed consistently with the express definition in the specification.  *Phillips*, 415 F.3d at 1315 (The specification is the "single best guide to the meaning of a disputed term.").

For example, claim 1 of the '621 patent recites:

1. A stable oral liquid formulation, consisting essentially of:
    . . .
    (ii) ***a buffer*** to maintain the pH about 4.5 or below, wherein the buffer concentration is about 5 mM to about 20 mM . . . .

Appx82 at 42:2-19. Azurity's construction of "one or more buffers" applies the definition set out in the specification and is in harmony with the rest of claim language:

> 1. A stable oral liquid formulation, consisting essentially of:
>    . . .
>    (ii) **one or more buffers** to maintain the pH about 4.5 or below, wherein the buffer concentration is about 5 mM to about 20 mM . . . .

Claims 1, 13, and 14 of the '868 patent; claims 1, 13, 14 of the '482 patent; and claims 1 and 19 of the '621 patent all share language that the buffer concentration is between about 5 mM and about 20 mM. There is no requirement that maintaining pH must come from a "one buffer" source—only that "a buffer" maintains the pH about 4.5 or below. Appx41, '482 patent at 13:23-24.

Moreover, the prosecution history does not suggest deviation from the meaning of "a" set out in the specification and dictated by Federal Circuit law. *KCJ Corp.*, 223 F.3d at 1357 ("intrinsic evidence simply provides no support for departing from the general rule," *e.g.*, prosecution history of patent at issue did not disclaim multiple chambers). Accordingly, every aspect of the intrinsic record—the claims, the specification, the prosecution history—supports Azurity's construction of "a buffer" to mean "one or more buffers." Thus, Azurity's construction is the correct construction and should be adopted.

### 2. Alkem's Answering Position

In the '868 patent this term is found in claims 1, 13, and 14 in this form:

> 1. A stable oral liquid formulation, consisting essentially of:
> …
> (ii) a buffer to maintain the pH about 4.5 or below, wherein the buffer concentration is about 5 mM to about 20 mM;…

In the '482 patent this term is found in claims 1, 13, and 14 in this form:

> 1. An oral liquid formulation comprising:
> …

> (ii) a buffer comprising a mixture of citric acid and sodium citrate,
> wherein the buffer is present at a concentration between about 5 mM
> and about 20 mM in the oral liquid formulation;…

For claim 13, the transitional phrase is "consisting essentially of" instead of "comprising."

In the '621 patent this term is found in claims 1, 19, and 30 in this form:

> 1. A stable oral liquid formulation, consisting essentially of:
> …
> (ii) a buffer to maintain the pH about 4.5 or below, wherein the
> buffer concentration is about 5 mM to about 20 mM…

For claim 30, the language: "wherein the buffer concentration is about 5 mM to about 20 mM" is
not included.

        **a)**      **The intrinsic evidence demonstrates the patentee understood
"a" to be limited to "one buffer," not "one or more buffers."**

                **i.**      **The patentee disavowed the claim scope of "more than
one" by replacing "comprising" with "consisting
essentially of."**

      In seven of the above claims, the patentee uses the transition term "consisting essentially
of" instead of "comprising." This was a deliberate choice by the patentee which excludes the
addition of any other components in the claimed formulations. Usually, "consisting essentially of"
is construed to mean that an invention "necessarily includes the listed ingredients and is open to
unlisted ingredients that do not materially affect **the basic and novel properties of the invention**."
*Amgen Inc. v. Hospira, Inc.*, 232 F.Supp.3d 621, 626 (D. Del. 2017)(quoting *PPG Indus. v.
Guardian Indus. Corp.*, 156 F.3d 1351, 1354 (Fed. Cir. 1998)) (emphasis added).

<u>The '008 Patent</u>

      "The prosecution history of [a] parent application is highly instructive in light of the
similarity between the claims of the application and those of the patents in suit." *Andersen Corp.
v. Fiber Composites, LLC*, 474 F.3d 1361, 1368 (Fed. Cir. 2007). During prosecution of the '008
patent—which all other patents-in-suit are continuations of—the patentee made several narrowing
statements. For example, the examiner originally rejected claims as obvious based on several prior

art references which contained similar components. (*See* Appx110-111). The patentee distinguished the prior art by saying it contained "a myriad of components, the majority of which are not present in the claimed formulations of the [patent application]." (Appx121). The applicant asserted that, unlike the prior art formulations which each contained ten or more components, **including multiple buffers**, "the formulation of the present claims has only <u>four</u> ingredients along with enalapril and water." (Appx121) (saying Nahata and Ora-Sweet syrup contain buffering agents (citric acid and either sodium phosphate or trisodium phosphate)); (Appx122) (emphasis in original). As such, the patentee believed the parent patent was distinguishable from the prior art based on the comparatively fewer required components, including the use of only a single buffer. *See Spectrum Int'l v. Sterilite Corp.*, 164 F.3d 1372, 1378-79 (Fed. Cir. 1988) ("Indeed by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover.").

The patentee further disavowed any additional components with specific reference to the "consists essentially of" language in one of the draft claims. (Appx117). The patentee emphasizes its use of "consists essentially of" and argues to the examiner that "none of the[] [prior art] references teach or suggest the claimed combination of <u>only</u> enalapril, citric acid, sodium citrate, sodium benzoate, sucralose and water at the recited concentrations and pH as stated in claim 20." (Appx117) (emphasis in original). Therefore, because the patentee asserts that the "novel properties of the invention" come from the narrowed set of ingredients that make the formulation, any additional ingredients would conflict with the "consisting essentially of" transitional phrase. *See Amgen Inc.*, 232 F.Supp.3d at 626. This disavowal of additional components while prosecuting the parent patent is "highly instructive" as to how the patentee construed claim terms in the child patents. *Andersen Corp.*, 474 F.3d at 1368.

The '868 Patent

Indeed, the patentee made similar narrowing arguments and amendments while prosecuting the '868 patent, which the '621 patent is also a continuation of. (Appx56). In a final rejection during prosecution of what would become claims 1, 13, and 14, the examiner found the buffer limitations to be overbroad: "The disclosure of a single buffer combination in a single amount fails to adequately address the scope of 'a buffer to maintain the pH about 4.5 or below.'" (Appx221-222). Specifically, the examiner faulted the application for not containing an "explicit proviso which would **exclude the use of additional components** in the instantly claimed formulation," while directly referencing the "comprising" transitional term as being open-ended and "not **exclud[ing] additional**, unrecited elements or method steps." (Appx228-229) (alterations and emphasis added).

In response to the rejection, the patentee limited the scope of the claims by amending the transition term "comprising" to "consisting essentially of." (Appx245-249). This amendment was made to resolve the examiner's concern that there was no "explicit proviso which would exclude the use of additional components." The patentee did not make any other amendment that could be read to exclude additional components as required by the examiner. Therefore, the claims were drafted such that "consisting essentially of" operates to exclude <u>any</u> additional ingredients, including more than one buffer. A Court can infer the intentional narrowing of a claim based on the applicant's "clear disavowal of claim coverage, such as an amendment to overcome a rejection." *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1327 (Fed. Cir. 2003) (citing *York Prods., Inc. v. Central Tractor Farm & Fam. Ctr.*, 99 F.3d 1568, 1575 (Fed. Cir. 1996)). As such, the patentee's amendment changing "comprising" to "consisting essentially of" disavowed coverage of any additional components in the formulations, which the examiner required for allowance.

13

The '482 Patent

For the reasons detailed above, the patentee's reliance on "consisting essentially of" to be exclusive as compared to "comprising" supports Alkem's construction regarding at least claim 13. *See Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1368 (Fed. Cir. 2007). The patentee made this argument to the examiner for the '008 patent on February 3, 2017 and filed the '482 patent's application on October 31, 2018 with the "consisting essentially of" language already included. (Appx117-118, 128, 267). As mentioned above, the prosecution history of parent patents is "highly instructive" as to how the patentee understood the meaning of "consisting essentially of" and "a buffer." *Andersen Corp.*, 474 F.3d at 1368.

The '621 Patent

The '621 patent was filed August 12, 2020 with every independent claim containing the "consisting essentially of" transition phrase. (Appx418-420). The '621 patent is a continuation of both the '008 and '868 patents' applications, and therefore the prosecution history of those patents is also "highly instructive." Even the examiner specifically noted that the claimed formulation "has been allowed and issued in the Parent patents." (Appx457). As such, the patentee and the examiner must have understood "consisting essentially of" to exclude other components as the patent office had required for both the'008 and '868 patents.

       **ii.    Only Alkem's construction provides sufficient guidance to a POSA as to the scope of the concentration limitations.**

Alkem's construction that "a buffer" means "one buffer" is also the only definition which sufficiently informs a POSA as to the buffer concentration limitations. For nearly all of the above disputed claims, there is a specific concentration requirement: about 5 mM to about 20 mM. If "a buffer" means "one or more buffers" it would be impossible for a POSA to know whether **one buffer** must be present between 5 mM to 20 mM or whether the **total combined** concentration of **buffers** must be between 5 mM and 20 mM.

14

For example, if a POSA's formulation includes a citrate buffer in a concentration of 18 mM, that would clearly fall within the scope of the claim. But, if the POSA also includes an acetate buffer with a concentration of 5 mM, there would be an issue of whether this brings the formulation outside the claim scope. The total concentration of the "one or more buffers" would be 23 mM—ostensibly outside the scope, but the patentee could assert that the POSA used "one buffer" that was 18 mM, which was within the scope. Another confusing example could arise if a POSA used 10 different buffers, each with a concentration of 2 mM. The POSA would claim they are outside the claim because no one buffer comprises between 5 mM and 20 mM, but the patentee would assert that the POSA used "one or more buffers" for a total concentration of 20 mM. Another possibility could arise where a POSA used one buffer in a concentration of 25 mM and another with a concentration of 10 mM. The POSA argues he used "more than one buffers" and the formulation was outside the claimed concentration; but the patentee would argue the POSA used "one buffer" with a concentration of 10 mM, which falls within the scope.

Plaintiff's construction would therefore, effectively allow the patents to cover any number of buffers in any concentrations as long as one buffer falls within the concentration of 5 mM to 20 mM or the combination of any number of buffers falls within that concentration. Such a broad coverage could not have been contemplated by the patentee or the examiner, and the patent office specifically said as much: "Applicant has failed to provide data supporting the breadth of the claims…the subject matter circumscribed by the instant claims extends well beyond the metes and bounds of these [disclosed] discrete embodiments…" (Appx221-222).

### iii. Nothing in the intrinsic evidence would teach a POSA that the claimed inventions could use more than one buffer.

Furthermore, even if the claims all used "comprising," the term "a buffer" should still be construed to mean only "one buffer" because every embodiment disclosed by the patentee uses a single buffer, and the patentee never suggests the possibility of multiple buffers. Indeed, the

patentee asserts the non-obviousness of the invention comes in part from its low number of ingredients compared to the prior art. (Appx122); *see Spectrum Int'l.*, 164 F.3d at 1378-79.

When discussing the use of buffering agents in the specification, the patentee includes an extensive list of buffering agents, including mixtures of the buffer and an amino acid, a mixture of acid salts with amino acids and buffers, and mixtures of alkali salts and amino acids and buffers. (Appx13, 13:23-45; Appx17, 21:11-30). Nowhere in the specification is it suggested that multiple different buffers can be used in the same formulation. *Laryngeal Mask Co. Ltd. v. Ambu*, 618 F.3d 1367, 1374 (Fed. Cir. 2010) ("Adequate written description requires that the applicant 'convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the claimed invention.'") (quoting *Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991)). If the patentee contemplated multiple different buffers, it could have included this possibility in the specification as it does with other combinations. The patentee recites the potential for a "mixture of parabens" (Appx12, 12:34-36), mixtures of coloring or flavoring agents (Appx15, 18:3-13), as well as a mixture of a buffer with other components (Appx17, 21:10-30), but never mentions a "mixture of buffers" or "combinations of buffers." (*See also* Appx11, 9:3-4; Appx17, 21:2, 22:49-53) (discussing the possibility of combining disclosed sweeteners, liquid vehicles, and mixing methods).

The prosecution history is similarly void of any references to multiple different buffers being used. The patentee submits multiple declarations during prosecution to show that the formulations were made with a variety of buffers; however, the declarations do not include a single example where multiple buffers were used. (Appx129-136) (only referencing single buffer containing citric acid and sodium citrate); (Appx233-243) (several different buffers used individually, not in combination); (Appx386-392) (discussing only a citrate buffer).

### iv.   The plaintiff's reliance on the "Certain Definitions" portion of the specification is unavailing.

"The patentee is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope." *Thorner v. Sony Computer Entertainment America LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012). Even if there is an explicit definition of a term, the patentee's definition will not control when intrinsic evidence casts doubt on that definition. *Jack Guttman, Inc. v. Kopykake Enterprises, Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002). The "Certain Definitions" portion of the specification defines "a," to include plural references "**unless the context clearly dictates otherwise.**" (Appx21, 29:23-25) (emphasis added). As mentioned above, there is clear contextual evidence that "a" does not mean "more than one" at least as it concerns the buffering limitations, based at least on: (1) the patentee's narrowing of the claims in the patents from "comprising" to "consisting essentially of;" (2) the patentee's pattern of reliance on a narrow interpretation of "consisting essentially of;" and (3) the lack of reference in the prosecution history or specification regarding multiple buffers.

### b)   The general rule that "a" means "one or more" in a patent claim is not applicable to the claims here.

### i.   The general rule cited by plaintiffs only applies with the "comprising" transition phrase.

In claims using "comprising," it is true that "[t]raditionally, 'a' means 'one or more'… because 'comprising' is an open transition phrase." *Purdue Pharma Prods. L.P. v. Par Pharmaceutical, Inc.*, 584 F.Supp.2d 664, 673 (D. Del. 2008) (quoting *Scanner Techs. Corp. v. ICOS Vision Sys. Corp., N.V.*, 365 F.3d 1299, 1305-1306 (Fed. Cir. 2004)). Indeed, the string cite in plaintiff's opening brief in support of this argument were all cases that discussed claims with the "comprising" transitional term, except for the *Intervet Inc.* case, where there was no transitional phrase. However, the '868 and '621 patent claims, and claim 13 of the '482 patent, all use the

17

transitional phrase "consisting essentially of" instead of "comprising." This is especially notable here because the patentee amended "comprising" to "consisting essentially of" in direct response to an examiner's rejection based on overbreadth of the claim scopes.

In *Norian Corp. v. Stryker Corp.*, the Federal Circuit reviewed a decision whether "a sodium phosphate" included "one or more sodium phosphates" or "only a single sodium phosphate." 432 F.3d 1356, 1358 (Fed. Cir. 2005). The district court construed the term to mean only one sodium phosphate, which was affirmed by the Federal Circuit. *Id.* at 1358, 1363. The Court noted the claim did not use "comprising" which would suggest an open-ended construction. *Id.* at 1359. While the specification included different solutions, they each only contained a single solute, and nothing in the specification pointed towards more than one sodium phosphate. *Id.* at 1359-60. The Court also mentioned the prosecution history reflected "a series of patentability rejections, followed by narrowing amendments and clarifying explanations," which "surrendered significant scope" of the disputed claim. *Id.* at 1360. The patentee directed the examiner to tables for examples of the single-solute solutions, but none of the solutions were made from a mixture of multiple sodium phosphates. *Id.* at 1360. Ultimately, the Court affirmed the district court's decision because the patentee's argument ran afoul of the language and prosecution history, which "underscore[d] the restrictive scope that was accorded to the claim language." *Id.* at 1361.

### ii. Even when the transition phrase "comprising" is used, the "rule" is still applied considering the intrinsic evidence.

Even when looking at claims which use "comprising," there are exceptions to this "general rule." *01 Comunique Laboratory, Inc. v. LogMeIn, Inc.*, 687 F.3d 1292, 1297 (Fed. Cir. 2012). For example, the rule is not applied "where the language of the claims themselves, the specification, or the prosecution history necessitate a departure..." *Id.* (quoting *Baldwin Graphics Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342-43 (Fed. Cir. 2008)); *Norian Corp.*, 432 F.3d at

1359 ("Although the word 'a' generally means 'one or more' in open-ended claims containing the transitional phrase 'comprising,' that general rule does not apply when the specification or the prosecution history shows that the term was used in its singular sense.") (citations omitted); *Ingenio, Filliale De Loto-Quebec, Inc. v. Gamelogic, Inc.*, 445 F.Supp.2d 443, 454 n.7 (D. Del. 2006). ("To determine whether 'a' means only one or more than one, the Federal Circuit looks to the language of the patent claims and specification"). Indeed, this Court will not define "a" to mean "one or more" if it is inconsistent with the prosecution history. *Intervet Inc. v. Boehringer Ingelheim Vetmedica, Inc.*, 11-595-LPS, 2012 WL 6097073, at *3 (D. Del. Dec. 7, 2012).

Here, as detailed above, the prosecution history and specification necessitate a departure from the "rule." There is no reference anywhere that "a buffer" could mean "more than one." Courts look to the specification and prosecution history to ensure there is no inconsistency before construing "a" as encompassing "more than one." *01 Communique Laboratory, Inc.*, 687 F.3d at 1297 (specification expressly discloses "one or more computers"); *Baldwin Graphic Systems, Inc.*, 512 F.3d at 1343 (district court erred in construing "a" as "only one" when it only relied on the patentee's use of "said" or "the" instead of clear indications of departure in the specification and prosecution history); *Gamelogic, Inc.*, 445 F.Supp.2d at 454 (rejects construing "a" as "only one" when only argument was use of "the" or "said"); *Intervet Inc.*, 2012 WL 6097073, at *3-4 (specification suggests "more than one" host cell). Unlike the above cases, the specification is silent as to whether multiple buffers are contemplated and there is extensive evidence in the prosecution history that conflicts with plaintiff's proposed meaning of "more than one" buffers.

### 3.    Azurity's Reply Position

Alkem's main argument of prosecution disclaimer for their narrow construction of "a buffer" fails to meet the required standard.  Alkem alleges the Applicant "disavowed the claim scope of 'more than one'" through their statements during prosecution (Joint Br. at 11), but Alkem

did not include nor analyze the doctrine's challenging standard.  As the intrinsic evidence supports Azurity's construction (*see* Joint Br. at 9-10), the term "a buffer" should be construed to mean "one or more buffers" in accordance with the well-established case law.

> a)      **Alkem's prosecution disclaimer argument fails to meet the applicable legal standard**

Application of the doctrine of prosecution disclaimer requires that disavowal of claim scope by the applicant "be both clear and unmistakable." *Mass. Inst. of Tech. v. Shire Pharm., Inc.*, 839 F.3d 1111, 1119 (Fed. Cir. 2016) ("*MIT*").  Such a high bar is required in order to overcome the "heavy presumption that claims terms carry their full ordinary and customary meaning." *Spectrum Pharma., Inc. v. Innopharma, Inc.*, No. 12-260-RGA-CJB, 2014 WL 3365684, at *6 (D. Del. July 3, 2014) (quoting *Omega Eng'g, Inc. v. Raytek Corp.,* 334 F.3d 1314, 1323, 1326 (Fed. Cir. 2003)).  In situations where "the alleged disavowal is ambiguous, or even amenable to multiple reasonable interpretations," prosecution disclaimer does not apply. *MIT*, 839 F.3d at 1119 (citing *Omega*, 334 F.3d at 1325 ("[W]e have thus consistently rejected prosecution statements too vague or ambiguous to qualify as a disavowal of claim scope.")).  Here, Alkem has failed to meet that burden because the Applicant never disavowed using more than one buffer.

As an initial matter, Alkem appears to be placing the burden of proof on the wrong party. By claiming (incorrectly) that there "is no reference anywhere that 'a buffer' could mean 'more than one'" and that "the specification is silent as to whether multiple buffers are contemplated" (Joint Br. at 19), Alkem seems to suggest it is Azurity's obligation to bring forward affirmative evidence showing the Applicant did not disclaim claim scope.  This argument places the burden on the incorrect party.  Instead, "[t]he *party seeking to invoke* prosecution history disclaimer [*i.e.* Alkem] bears the burden of proving the existence of a clear and unmistakable disclaimer that

would have been evident to one skilled in the art." *MIT*, 839 F.3d at 1119.[5]  As Alkem has not, prosecution disclaimer cannot attach.

Alkem points to two portions of the prosecution where the Applicant allegedly disavowed additional ingredients: (1) during statements relating to the claimed formulation's unique selection of ingredients not found in prior art and (2) by changing the transitional phrase in certain (but not all) claims from "comprising" to "consisting essentially of."  Joint Br. at 11-14.  The first instance only occurred in the prosecution of the '008 Patent, and the second only in certain claims of the '868, '482, and '621 Patents.  Neither meets the "clear and unmistakable" standard.

First, Alkem focuses on prosecution history of the parent patent (the '008 patent) but ignores that the claims at issue during that prosecution (and that issued in the '008 patent) recited two buffering agents (citric acid and sodium citrate) and thus are not as narrow as the construction that Alkem seeks.  Joint Br. at 11-12; *see* Appx143-148 ('008 Patent, Mar. 22, 2017 Supplemental Amendment).   Moreover, Alkem's understanding of the Applicant's statement during that prosecution regarding the claimed formulation's ingredients misses the purpose of the Applicant's arguments.  These arguments focused on the superior stability of the claimed formulation (which contained two buffering agents) over even the best stability found in the prior art—at no time did the Applicant argue that one buffer was a unique element of the claim.  *See* Appx 112-117 ('008 Patent, Feb. 3, 2017 Response ("'008 Response") at 7-12).  For example, during prosecution of the application that would become the '008 Patent, the Applicant's first subheading was "None of the Cited references Teach Enalapril Formulations that are Stable at about 5±3°C for at Least 12

---

[5] Improper shifting of the burden aside, Alkem's argument that "a buffer" can only mean "one buffer" fails because it is entirely based on Alkem's mistaken presumption that "the claims were drafted such that 'consisting essentially of' operates to exclude any additional ingredients."  Joint Br. at 13.  Alkem's legally and factually incorrect definition of "consisting essentially of" is addressed *infra*, Section III.E.1 and III.E.3.

Months."  Appx112 ('008 Response at 7).  The Applicant continued by citing a declaration of the inventor of the formulation, Dr. Gerold Mosher, which graphically illustrated the superior stability of his invention over that of the prior art formulations.  Appx113-117 ('008 Response at 8-12).  It is only at the end of this nearly six page section that the Applicant raises their second reason the claimed invention was not obvious in a second subheading titled "The Cited References Also do Not Teach the Claimed Combination of Components in the Present Enalapril Formulations."  Appx117 ('008 Response at 12).  This subsection argues that while each of the claimed ingredients may have been disclosed in the prior art, no formulation from the prior art includes all the claimed ingredients together.  Indeed, this language cannot be a disavowal of more than one buffer as the '008 Response, and the claim to which it referred, included both sodium citrate and citric acid, two separate buffer components.  *Id.*

Second, Alkem ignores that the claims at issue here have a different scope than those of the '008 Patent and its prosecution.   The '008 Response identified four ingredients in addition to enalapril and water: citric acid, sodium citrate, sodium benzoate, and sucralose.  *Id.*  In stark contrast, the claims of the '621 Patent do not require any specific buffer and require a preservative other than sodium benzoate:

> A stable oral liquid formulation, consisting essentially of: (i) about 0.6 to about 1.2 mg/ml enalapril or a pharmaceutically acceptable salt or solvate thereof; (ii) a buffer to maintain the pH about  4.5 or below, wherein the buffer concentration is about 5 mM to about 20 mM; (iii) a preservative, wherein the preservative is a paraben or a mixture of parabens . . . .

Appx82, Claim 1.  Additionally, the '482 Patent, Claim 14 contains the open-ended "comprising" language and also does not require any sodium benzoate:

> An oral liquid formulation, comprising: (i) about 0.6 to about 1.2 mg/ml enalapril or a pharmaceutically acceptable salt or solvate thereof; (ii) a buffer comprising a mixture of citric acid and sodium citrate, wherein the buffer is present at a concentration between about 5 mM and about 20 mM in the oral liquid formulation; (iii) about 1 mg/ml of a preservative, wherein the preservative is a paraben or a mixture of parabens . . . .

Appx55.  These claims recite ingredients other than those recited in the '008 Response, and on

their face cannot be limited to those ingredients.[6]  Moreover, because the '482 Patent claims

include the open-ended "comprising" language, the claims may include other ingredients not listed

in the claim.  Alkem's argument that even claims with the "comprising" language should be limited

to "one buffer" is unavailing: every case they cite in support of their argument that the court needs

to look to the prosecution history and specification to confirm "a" means "more than one" finds

that it does;[7] this case is no exception.

    Third, Alkem's argument regarding the amendment of the transitional phrase "comprising"

to "consisting essentially of" takes the examiner's language and the patentee's response out of

context and ignores the plain and ordinary meaning of "a."  Alkem argues that in the prosecution

history of the '868 Patent, the examiner found a limitation to be overbroad.  Joint Br. at 13.

However, this citation to the examiner's rejection refers instead to the Applicant's use of "a single

buffer *combination* [of sodium citrate and citric acid]" to support its unexpected results claim.  The

examiner goes on to explain, "[t]hus, Applicant has failed to provide data supporting the breadth

of the claims. . . . In other words, the showing of unexpected results must be reviewed to see if the

results occur over the entire claimed range." Appx221 (internal citations omitted).  The response

---

[6] Alkem cites *Andersen Corp.* for the rule that the prosecution history of a parent application may be instructive to continuation applications.  Joint Br. at 14 (citing 474 F.3d at 1368).  However, this is only the case when the "subsequently issued patents contain <u>the same limitation</u>." *Andersen*, 474 F.3d at 1368.  This rule does not apply here as the patents-at-issue have different scope than that of the '008 Patent.

[7] *01 Communique Lab.,* 687 F.3d at 1297 ("LogMeIn's argument is at odds with our well-established precedent. . . .  Here, nothing in the claim language or the specification compels a departure from the general rule."); *Baldwin Graphics*, 512 F.3d at 1343 (district court erred in construing "a" as "only one" because the "record does not contain a clear indication that the applicant departed from the general rule for the article 'a'"); *GameLogic*, 445 F. Supp. 2d at 454 (rejected construing "a" as "only one" in part because GameLogic did not cite a single case in support of its position); *Intervet*, 2012 WL 6097073 at *3 (same case cited in Azurity's opening brief to support assertion that the word "a" is generally understood to mean "one or more").

to this was *not*, as Alkem incorrectly states, to amend the transitional phrase.  Instead the Applicant submitted an inventor declaration that demonstrated unexpected results from several other buffers, including at least one buffer that contained multiple buffer species (i.e. a formulation with more than one buffer), specifically H3, the citrate/phosphate buffer made from citric acid, anhydrous and disodium hydrogen phosphate, anhydrous:

| Compositions (mg/mL) for Stability Testing at 5 °C and 25 °C | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | H1 | H2 | H3 | H4 | H5 | H6 | H7 | H8 | H9 |
| Ingredients | Citrate | Phosphate | Citrate/ Phosphate | Acetate | Glycine | Tartrate | Citrate | Citrate | Citrate |
| Acetic acid, glacial | - | - | - | 0.58 | - | - | - | - | - |
| Sodium Acetate | - | - | - | 0.04 | - | - | - | - | - |
| Citric acid, anhydrous | 1.82 | - | 1.07 | - | - | - | 1.92 | 1.92 | 1.92 |
| Sodium citrate, dihydrate | 0.15 | - | - | - | - | - | - | - | - |
| Glycine | - | - | - | - | 0.75 | - | - | - | - |
| Sodium dihydrogen phosphate, anhydrous | - | 1.2 | - | - | - | - | - | - | - |
| Disodium hydrogen | - | - | 0.63 | - | - | - | - | - | - |

Appx236 (Table 1, excerpted).

Alkem identified no case law that found an applicant's amendment of "comprising" to "consisting essentially of" requires or even suggests a finding of prosecution disclaimer.  In fact, at least one other district court found such an argument "far too slender a reed to support the judicial narrowing of a clear claim term."  *Callicrate v. New Age Indus. Corp.*, No. 04-4008-JAR, 2005 WL 1027095, at *10 (D. Kan. Apr. 27, 2005) (quoting *Omega*, 334 F.3d at 1324).  The amendment from "comprising" to "consisting essentially of" did not magically and without further argument from the Applicant narrow "a" from the well-accepted definition of "one or more" to "one and only one," nor does Alkem argue that it did so with respect to any of the other elements

that are present in some or all of the claims—"a preservative", "a sweetener", and "a flavoring agent."[8]

Alkem has not met their considerable burden of proving the Applicant, during prosecution of any of the Asserted Patents, disclaimed claim scope such that "a buffer" is restricted to mean only "one buffer." Instead, the proper meaning as would be understood by a POSA reading the intrinsic evidence—including the express definition in the specification—is that "a buffer" should be construed to mean "one or more buffers," in alignment with well-established precedent. Therefore, Azurity respectfully asks the Court to adopt its construction.

> **b)** **Azurity's construction provides sufficient guidance to a POSA when calculating the buffer concentration in the claimed formulation**

Alkem's series of hypotheticals about buffer concentrations does not support limiting "a buffer" to a single buffer. Joint Brief at 14-15. Azurity's proposed construction, which reflects the express definition in the specification, is easily applied to the claim language and introduces no confusion. For example, claim 14 of the '482 Patent requires "a buffer comprising a mixture of citric acid and sodium citrate, where in the buffer is present at a concentration between about 5 mM and about 20 mM in the oral liquid formulation." Appx55. Both the open-ended "comprising" language of the transitional phrase in the beginning of the claim and the "comprising" language defining the buffer demonstrate that the buffer may have additional components. But the

---

[8] While Alkem points out that the specification discusses combining sweeteners, the lack of a similar statement for the buffers in the specification does not equate to a "clear and unmistakable" disclaimer. Nor are there similar statements for the preservatives. In fact, the specification only ever describes "a preservative," but points out that it may be made of "a mixture of parabens." This is akin to describing "a buffer" that may be made of multiple components, including sodium citrate and citric acid, and undermines Alkem's statements that the specification never describes combining buffers. Indeed, the specification is explicit as to the meaning of "a" when it defines it as "one or more." Appx21 at 29:23-28.

combination of these components would be present in the defined amount in the claim language, as citric acid and sodium citrate are.  That the claimed "one or more buffers" must also meet a separate concentration limitation in some claims does not support the notion that there must only be one buffer.  Two buffers can be present in a required amount.[9]

### c) Alkem's remaining arguments concerning the intrinsic evidence are unavailing

Alkem's allegation that the intrinsic evidence does not show that "a buffer" could encompass "more than one [buffer]" is wrong.  Joint Br. at 15-16.  The intrinsic evidence provides considerable support for Azurity's construction of "a buffer" to mean "one or more buffers."  First, the plain language of Claims 5, 18, and 30 of the '868 Patent and Claims 4 and 20 of the '621 Patent all claim a multi-component buffer, specifically a citrate/phosphate buffer.  Appx27-28 ('868 Patent), Appx82-83 ('621 Patent).  Alkem's proposed construction cannot be applied to these claims, and thus should be rejected.  Also, in Dr. Mosher's May 14, 2020 declaration in Table 1, formulation H3 contains a citrate/phosphate buffer.  Appx236 (Dr. Mosher's May 14, 2020 Decl. at 4); *see* § III.A.3.a, *supra*.  In addition, the specification continually uses the transitional phrase "comprising" when discussing potential buffering agents, i.e., "the buffer in the enalapril oral liquid formulation described herein *comprises* citric acid," "the buffer in the enalapril oral liquid formulation described herein *comprises* phosphoric acid," "the buffer in the enalapril oral liquid formulation described herein *comprises* sodium phosphate."  Appx13 ('868 Patent at 13:48-63).  The transitional term "comprising," as Alkem agrees, allows for other ingredients to be added, meaning the specification contemplates the possibility that other buffers are added to the

---

[9] Indeed, ███████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████  *E.g.*, '482 Patent at Claim 14 ("a buffer comprising a mixture of citric acid and sodium citrate, wherein the buffer is present at a concentration between about 5 mM and about 20 mM in the oral liquid formulation").  Thus, Alkem's hypothetical ambiguity has no basis in reality.

formulation in addition to the specifically recited buffer.  Collectively, therefore, the intrinsic evidence confirms the specification's express definition that "a buffer" means "one or more buffers."

        **d)**       **The well-established rule that "a" or "an" means "one or more" is controlling here**

The case law cited by Alkem emphasizes that there must be significant evidence to support a departure from the well-established rule that "a" or "an" mean "more than one."  For example, *Baldwin Graphics* explains that the "district court erred in construing 'a' as 'only one' when it only relied on the patentee's use of 'said' or 'the' instead of clear indications of departure in the specification and prosecution history."  Joint Br. at 18 (citing 512 F.3d at 1342-43).  This "clear indication of departure" from the well-established rule is precisely what is missing from the intrinsic evidence of the Asserted Patents.  Instead, the specification actually includes the general rule that "a" means "one or more" as an express definition.  Appx21 at 29:23-28.[10]  Alkem has not identified sufficient evidence to overcome either the general rule or that express definition.

In their effort to depart from the considerable case law supporting Azurity's construction, Alkem argues incorrectly that the use of the transitional phrase "consisting essentially of" mandates a departure from the plain and ordinary meaning of "a" and the express definition in the specification.  Joint Br. at 13-14.  Alkem cites no case law that supports this argument.  The case law they do cite supports Azurity's construction.[11]  Alkem also does not cite any authority for

---

[10] Alkem cites *Jack Guttman* to assert that "a patentee's definition will not control when intrinsic evidence casts doubt on that definition."  Joint Br. at 17 (citing 302 F.3d at 1361).  However, *Jack Guttman* provides a perfect example of a situation where "the patentee's definition controls" because the Court found that "no other intrinsic evidence casts doubt on [the explicit definition]."  302 F.3d at 1361.

[11] Alkem cites *01 Communique Lab.* in an attempt to illustrate "exceptions" to this well-established rule.  Joint Br. at 18 (citing 687 F.3d at 1297).  However, this case only highlights another fact pattern in which "nothing from the claim language or the specification compels a departure from

27

departure from the plain and ordinary meaning of "a" in the context of "consisting essentially of."[12] Alkem also cites *Intervet Inc.*, but this case was cited in Azurity's opening brief as another example of "a" or "an" being construed to mean "one or more" and is not helpful to Alkem's position here. Joint Br. at 9 (citing 2012 WL 6097073 at *3).

As Alkem's argument for their construction of "a buffer" does not meet the standard for prosecution disclaimer and is at odds with both the intrinsic evidence and the case law, Alkem's construction should not be adopted. Instead, Azurity respectfully asks the Court to adopt its construction of "a buffer" to mean "one or more buffers," which is in harmony with both the intrinsic evidence and the case law.

### 4. Alkem's Sur-Reply Position

#### a) Alkem set forth sufficient evidence to prove Azurity disclaimed more than one buffer.

---

the general rule." *01 Communique Lab.*, 687 F.3d at 1297. Alkem also cites *Amgen Inc. v. Hoechst Marion Roussel, Inc.* to assert that "[a] Court can infer the intentional narrowing of a claim based on the applicant's "clear disavowal of claim coverage," (Joint Br. at 13 (citing 314 F.3d at 1327), but this case found that no disavowal occurred.

[12] Alkem's citation to *Norian Corporation* is inapposite. 432 F.3d 1356. In *Norian* the transitional phrase was amended from "comprising" to "consisting of." *Id.* at 1360. In addition, "[o]ther references in the prosecution history underscore[d] the restrictive scope that was accorded to the claim language," including a reference to having "at least one" of another excipient. *Id.* at 1359-61. The claims here do not reflect such alternative language. In view of these factual differences, *Norian* is unhelpful to Alkem's argument. *See Prostrakan, Inc. v. Actavis Labs. UT, Inc.*, No. 2-16-CV-0044-RWS-RSP, 2017 WL 3028876 (E.D. Tex. July 15, 2017), *aff'd*, 787 Fed. Appx. 757 (Fed. Cir. 2019) (rejecting Defendant's arguments because the case law cited involved claims with the transitional phrase "consisting of" and not the transitional phrase at issue, "consisting essentially of"). Alkem also cites *Amgen Inc. v. Hospira, Inc.* for the rule that the transitional term "consisting essentially of" allows "unlisted ingredients that do not materially affect the basic and novel properties of the invention." Joint Br. at 11 (emphasis omitted) (citing 232 F. Supp. 3d at 626). *Hospira* is a good example of claim language restricting the scope of "a" or "an" to "only one" because the patents claimed "a single specific number of sialic acids per molecule." 232 F. Supp. 3d at 626. This allowed the court to find the claim referred to "one and only one isoform." *Id.*

28

Alkem demonstrated that the patentee made a clear and unmistakable disavowal of claim scope while prosecuting the patents-in-suit and their parent patent. Azurity argues that the patentee's emphasis during prosecution on the fewer required ingredients in claim 20 of the '008 patent, and the claim's use of "consists essentially of" should be given less weight because the section that it is a part of was directed to the stability of the claimed invention. (Joint Brief at 21-22). The title of the particular subheading or the inclusion of other arguments do not erase the fact that, to overcome an obviousness rejection, the patentee cited the "consists essentially of" transition to demonstrate that the prior art did not teach or suggest the claimed formulation of "only enalapril, citric acid, sodium citrate, sodium benzoate, sucralose and water." (Appx117) (emphasis in original). As such, the patentee "clear[ly] and unmistakabl[y]" disavowed any additional ingredients in the formulation recited in draft claim 20 of the '008 patent. As mentioned in Alkem's answering brief, the prosecution of the parent '008 patent is highly instructive in light of the similarity between the claims of the application and those of the patents in suit. (Joint Brief at 11). Therefore, the patentee's understanding and use of "consists essentially of" in the parent patent is highly instructive as to how the Court should construe "consists essentially of" in the patents-in-suit. This understanding is reinforced throughout the prosecution history and the specification.

Azurity also claims the '008 patent recited "two separate buffer components" meaning it cannot be a disavowal of more than one buffer. (Joint Brief at 22). However, a single buffer may require more than one component, such as an acid and a base or a salt[13]—for example, citric acid and sodium citrate. Therefore, the '008 patent claims do not recite more than one "buffer" but instead they recite two ingredients that form one "buffer."

---

[13]   Encyclopaedia Britannica, *Buffer / chemistry* (last visited Aug. 5, 2021), https://www.britannica.com/science/buffer-chemistry.

Azurity also argues the prosecution history of the '008 patent is only instructive when the "subsequently issued patents contain the <u>same limitation</u>." (Joint Brief at 23) (emphasis in original). However, *Andersen Corp. v. Fiber Composites, LLC* does not make it a requirement that the limitations be the same—this is a quote from *Elkay Mfg. Co. v. EBCO Mfg. Co.*, which *Andersen Corp.* cited for its assertion that the prosecution history of the parent is "highly instructive." *Andersen Corp.*, 474 F.3d 1361, 1368 (Fed. Cir. 2007) (citing 192 F.3d 973, 980 (Fed. Cir. 1999)). In fact, the *Andersen Corp.* case involved claims that had "nearly identical" language as the parent application—not "the same" language. *Id.* The Court noted that throughout prosecution of the child patents, "the applicants continued to distinguish the claimed inventions from prior art references in the same manner," which served to limit the scope of the claimed subject matter. *Id.* at 1369. Here, the patentee also distinguished the claimed inventions from prior art across both the parent and child patents that involve "nearly identical" language. (Joint Brief at 12-14).

Contrary to Azurity's arguments, it is unmistakable that the patentee amended the claims in the '868 patent from "comprising" to "consisting essentially of" to exclude additional components from the formulation. Indeed, the examiner expressly required the patentee to do so. (Appx228-229). The examiner specifically directed the applicant to the "comprising" transition term and faulted the claims for not containing an "explicit proviso which would <u>exclude the use of additional components</u>." *Id.* (emphasis added). The very next amendment to the claims replaced "comprising" with "consisting essentially of" to solve this flaw. (Appx245-248). Azurity does not address this express instruction from the examiner in its reply.

Azurity further faults Alkem for not identifying any case law where an amendment from "comprising" to "consisting essentially of" suggests a finding of prosecution disclaimer. (Joint Brief at 24). However, it is a general principle of claim construction that a patentee's decision to

narrow his claim through amendment may be presumed to be a disclaimer of the territory between the original claim and the amended claim. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 740 (2002). It is undeniable that "consisting essentially of" is a narrower transition phrase than "comprising" and it is clear from the examiner's rejection that the claims required an "explicit proviso which would exclude the use of additional components." (Appx228-229). The only amendment to the claim language which could exclude additional components per the examiner's direction is the patentee's switch from the open transition term "comprising" to the "consisting essentially of" term. As mentioned in Alkem's answering brief, an intentional narrowing can be inferred by this amendment to overcome rejection. (Joint Brief at 13).

Azurity next cites an out-of-circuit district court case for proof that amending "comprising" to "consisting essentially of" did not narrow the claims of the patent. (Joint Brief at 24). However, this case is more supportive of Alkem's position than Azurity's. In *Callicrate v. New Age Indus. Corp.*, the defendant argued that an amendment from "comprising" to "consisting essentially of" excluded potential examples of a "connection means" in a means-plus-function term. No. 04-4008-JAR, 2005 WL 1027095, at *10 (D. Kan. Apr. 27, 2005). Specifically, the defendant argued this amendment meant the transition term restricted the limitation so that it could only include "a wire" as opposed to "a clip, wire band, grommet or other equivalent device," as the plaintiff proposed. *Id.* at *8. By its nature, a means-plus-function term is drafted to have a broad scope of potential "means" for performing a special function. This broad type of claim is not at issue in the present case. Furthermore, the *Callicrate* Court was able to point to the limitation that the "consisting essentially of" amendment actually restricted. Coincidentally, it restricted "**a** deformable **grommet**" to mean "only one grommet" to overcome a rejection based on a prior art reference that disclosed two grommets. *Id.* at *5, *10 (emphasis added). This is strikingly similar to the present

31

dispute and proves that an amendment from "comprising" to "consisting essentially of" can indeed operate to limit "a" to mean "only one."

> **b)   Alkem's construction is the only one that could sufficiently inform any POSA of the scope of the buffer limitation.**

Azurity dismisses Alkem's multiple possible interpretations of the claim language without addressing how the specification teaches a POSA which of them would and would not be encompassed by their construction. There is no instruction in the specification on how to combine multiple different buffers in a way that would maintain the concentration and stability as required by the claims and Azurity points to none. Azurity also notes that Alkem's ANDA contains an amount of buffer that happens to fall within the claimed concentration, but this does not automatically render the scope of the claims understandable to any POSA reading the patents.

> **c)   The patentee understood a "citrate/phosphate buffer" as a single buffer, not a combination of buffers.**

Azurity also argues that the intrinsic evidence supports a construction that encompasses multiple buffers because of the reference to a "citrate/phosphate buffer." (Joint Brief at 26). However, the declaration of Dr. Mosher, one of the two inventors, demonstrates that the patentee considered this to only be one buffer, not a combination of buffers.  In the declaration, Dr. Mosher lists the different types of buffers that he used to demonstrate the stability of the formulations: "Formulation in Table 3 were prepared using fumarate, tartrate, malate, aspartate, glycinate, lactate, formate, phthalate, acetate, succinate, gluconate, glutamate, citrate, phosphate, and citrate/phosphate buffers, respectively." (Appx238). Listing the different buffers in this way shows that the patentee understood each listed substance to be a single, independent buffer, including a citrate/phosphate buffer. This listing was done throughout the declaration. (Appx236, 240). The separate listing also occurs in the claims as well—further demonstrating the patentee's understanding that "citrate/phosphate" is a single buffer separate from citrate and phosphate.

32

Table 1 submitted along with this declaration also proves the "citrate/phosphate buffer" is its own type of singular buffer, and not a combination of buffers. (Appx236-237). If the citrate/phosphate buffer was a combination of the citrate and phosphate buffers, one would expect some combination of the two individual buffers' compositions. But that is not what is seen in Table 1. According to Table 1, the citrate buffer contains citric acid and sodium citrate (or just citric acid in H7-H9), while the phosphate buffer contains sodium dihydrogen phosphate. (Appx 236-237). However, the citrate/phosphate buffer contains citric acid and *disodium hydrogen* phosphate, not *sodium dihydrogen* phosphate. (Appx236-237). The use of two different ingredients in the two different buffers proves that the citrate/phosphate buffer is its own type of buffer and not just a mixture of citrate and phosphate buffers.

### Table 1

| Ingredients | Compositions (mg/mL) for Stability | | |
| --- | --- | --- | --- |
| | H1 | H2 | H3 |
| | Citrate | Phosphate | Citrate/ Phosphate |
| Acetic acid, glacial | - | - | - |
| Sodium Acetate | - | - | - |
| Citric acid, anhydrous | 1.82 | - | 1.07 |
| Sodium citrate, dihydrate | 0.15 | - | - |
| Glycine | - | - | - |
| Sodium dihydrogen phosphate, anhydrous | - | 1.2 | - |
| Disodium hydrogen phosphate, anhydrous | - | - | 0.63 |

(Appx236-237) (altered for Court's convenience).

**d)       The "rule" regarding "a" or "an" is not applicable here.**

Azurity continues to urge the Court to blindly accept the "rule" that "a" means "one or more" but neglects to address the significant flaw with the application of that "rule" noted by Alkem. (Joint Brief at 17-18). Instead, Azurity incorrectly asserts that Alkem argues "consisting essentially of" "mandates a departure" from this "rule." (Joint Brief at 27). This mischaracterizes

Alkem's true position, which is that the "rule" only *generally* applies when "*comprising*" is the transition phrase. (Joint Brief at 17). In at least the instances where "consisting essentially of" is used, this general "rule" carries no weight.

Alkem also cited several cases that show even when "comprising" is used, the Court must still make sure that construing "a" as "one or more" does not conflict with the intrinsic evidence. Contrary to Azurity's assertion, Alkem has demonstrated above and in its answering brief that there is more than enough evidence to construe "a buffer" to mean only "one buffer." For these reasons, Alkem respectfully requests the Court to apply the meaning understood by the patentee and the patent office of "a buffer" as "one buffer."

### B.    "A Buffer to Maintain the pH"

| Disputed Claim Term | Azurity's Construction | Alkem's Construction |
|---|---|---|
| **"a buffer to maintain the pH"** '868 patent, claims 1, 13, 14; '621 patent, claims 1, 19, 30 | "one or more buffers to maintain the pH" | "one buffer that maintains the pH" |

### 1.    Azurity's Opening Position

Alkem identified the term "a buffer to maintain the pH" in claims 1, 13, and 14 of the '868 patent and claims 1, 19, and 30 of the '621 patent for construction.  D.I. 51-1, Ex. B at B-5.  These '868 and '621 patent claims, as well as Alkem's cited intrinsic evidence, are identical (and redundant) to those listed for the disputed term "a buffer."  *Compare* D.I. 51-1, Ex. B at B-1–B-5 *with id.* at B-5–B-9.  In fact, the disputed term "a buffer" as identified by Alkem for the '868 and '621 patent is fully subsumed in the disputed term "a buffer to maintain the pH."  *See* Appx27-28, '868 patent at 41:41-58 (claim 1), 42:18-34 (claim 13), 42:35-52 (claim 14); Appx82-83, '621 patent at 42:2-19 (claim 1), 43:1-19 (claim 19), 44:17-33 (claim 30).  To the extent the dispute is over the construction of the phrase "a buffer" as it appears within the broader term "a buffer to

maintain the pH," Section III.A *supra*, which is fully incorporated herein, addresses why Azurity's proposed construction of "one or more buffers" is the correct construction.

The remaining difference between Azurity's construction versus Alkem's construction appears to be the use of "to" by Azurity versus "that" by Alkem:

| Azurity | Alkem |
|---|---|
| "one or more buffers ***to*** maintain the pH" | "one buffer ***that*** maintains the pH" |

To the extent Alkem's definition is intended to change the literal words of the claim phrase, it is improper.  Azurity's definition is consistent with the phrase in the claim and consistent with the specification.  Appx41, '482 patent at 13:23-24.  Furthermore, Azurity's construction of "***to*** maintain the pH" is consistent with the purpose of "a buffer" according to the specification and intrinsic record—*i.e.*, maintain pH.  *E.g.*, *id.*; Appx243 ('868 patent, 5/14/2020 Mosher Decl., ¶ 26 ("variety of buffers, which are capable of maintaining the pH values of the formulations at about or below 4.5")).

### 2.    Alkem's Answering Position

This claim term is found in claims 1, 13, and 14 of the '868 patent, and claims 1, 19, and 30 of the '621 patent. See Section III.A.2 for the disputed term in the context of the claims.

#### a)    The prosecution history and specification do not suggest the possibility of multiple buffers.

As detailed above, the prosecution history of this patent family and the common specification would not lead a POSA to believe that more than one buffer to maintain the pH would be included as a component in the disputed claims. (Section III.A.2). The Court should construe the term to reflect the patentee's intent that the formulations include only "one buffer that maintains the pH."

### 3.    Azurity's Reply Position

Alkem presents no argument specific to this claim phrase.  Accordingly, Azurity's construction should be adopted for the reasons discussed above (*see* § III.A.1, *supra*), and because

Azurity's construction of "a buffer to maintain the pH" mirrors the claim language as discussed in Azurity's opening.  Joint Br. at 34-35.[14]

### 4.    Alkem's Sur-Reply Position

For the same reasons discussed above, Alkem's construction should be adopted for this term.

### C.    "A Citrate Buffer . . ."

| Disputed Claim Term | Azurity's Construction | Alkem's Construction |
|---|---|---|
| **"a citrate buffer** *[to maintain the pH about 4.5 or below comprising citric acid and sodium citrate]*" <br> '868 patent, claim 26 | No construction needed. <br> To the extent a construction is needed, plain and ordinary meaning. | "one buffer comprising citric acid" |

### 1.    Azurity's Opening Position

Claim construction begins with the words of the claim.  *Phillips*, 415 F.3d at 1312; *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001).  Here, the claim language of the '868 patent, claim 26 itself lends context to the disputed term "a citrate buffer," and supports Azurity's position that this term needs no construction.  The full claim limitation is:

> 26.  A stable oral liquid formulation, consisting essentially of:
>
> . . .
>     (ii) *a citrate buffer* to maintain the pH about 4.5 or below *comprising citric acid and sodium citrate* . . . .

Appx28.  Claim 26 of the '868 patent already gives additional context to "a citrate buffer" because "a citrate buffer . . . compris[es] citric acid and sodium citrate."[15]  This understanding that "a citrate

---

[14] To the extent Alkem introduces substantive arguments for the first time in its sur-reply, Azurity reserves the right to respond.

[15] To the extent Alkem's construction of "a citrate buffer" is another attempt to construe "a buffer" or "a buffer to maintain the pH," Azurity incorporates herein its discussion in §§ III.A.1, III.A.3, III.B.1, and III.B.3 *supra*.

buffer" in claim 26 comprises citric acid and sodium citrate is consistent with the specification and the prosecution history. *E.g.*, Appx9, '868 patent at 6:38-42; Appx13, '868 patent at 13:48-58; Appx22, Tables A-1 and B-1 (showing formulations "at varying citrate buffer concentrations"); Appx171 ('868 patent, 5/2/2019 OA at 4 ("provisional election was made without traverse to prosecute the buffer species wherein the buffer comprises citric acid and sodium citrate")); Appx173 ('868 patent, 5/2/2019 OA at 6 (Examiner discussing prior art reference comprising "a citrate buffer solution" prepared with citric acid and sodium citrate)); Appx188 ('868 patent, 8/1/2019 Response at 6 (Applicant affirming provisional election)); Appx236 ('868 patent, 5/14/2020 Mosher Decl., ¶ 14 (discussing formulations with "citrate-based buffers")).

Where the claim language and/or the intrinsic evidence adequately provides meaning to a claim term, no construction is necessary. *E.g.*, *UCB, Inc. v. Actavis Labs. UT, Inc.*, No. 19-474-LPS, 2020 WL 599446, at *4 (D. Del. Feb. 7, 2020) (finding "a dispersing agent" to have its plain and ordinary meaning, no construction necessary); *Eisai Co., Ltd. v. Glenmark Pharm., Ltd.*, No. 13-1279-LPS, 2015 WL 1228958, at *11 (D. Del. Mar. 17, 2015) (agreeing with Plaintiffs that no construction is necessary; plain and ordinary meaning for dispute term "sodium carboxymethylcellulose"); *see also Clear with Computs., LLC v. AGCO Corp.*, No. 6:12-CV-622, 2014 WL 2700376, at *3-6 (E.D. Tex. June 13, 2014) (finding multiple claim terms did not require construction and that defendants failed to support their proposed constructions because such constructions, *inter alia*, were "redundant of the preamble," "addressed by the surrounding claim language," and "needlessly add[ed] complication and confusion to a well-understood term"). Likewise here, no construction of "a citrate buffer" is necessary, and to the extent the Court finds a construction is needed, "a citrate buffer" should have its plain and ordinary meaning consistent with the remainder of the claim.

37

Alkem's proposed construction of "a citrate buffer" as "one buffer comprising citric acid," is inconsistent with the remaining claim language "comprising citric acid **and** sodium citrate." Such a nonsensical construction cannot be correct.

### 2.      Alkem's Answering Position

This claim term is present in claim 26 of the '868 patent in this form:

> 26. A stable oral liquid formulation, consisting essentially of:
> …
> (ii) a citrate buffer to maintain the pH about 4.5 or below comprising citric acid and sodium citrate;…

#### a)      The prosecution history and specification indicate that "a" means "one" in this term.

As detailed above, this claim was similarly amended in response to an overbreadth rejection by changing "comprising" to "consisting essentially of." (Appx222, 227-229, 248). For the same reasons indicated in Section III.A.2, the "a" in this claim should also be construed to mean "one."

#### b)      As used during the '868 patent's prosecution, "citrate buffer" describes a buffer comprising citric acid.

Dr. Mosher's May 14, 2020 declaration during prosecution of the '868 patent demonstrates the patentee's understanding that a "citrate" buffer does not include sodium citrate. (Appx233). For example, Table 1 details the stability testing of several compositions that allegedly fall within the scope of the claims as they were drafted at the time. (Appx236-237).

**Table 1**

| Ingredients | H1 Citrate | H2 Phosphate | H3 Citrate/ Phosphate | H4 Acetate | H5 Glycine | H6 Tartrate | H7 Citrate | H8 Citrate | H9 Citrate |
|---|---|---|---|---|---|---|---|---|---|
| Compositions (mg/mL) for Stability Testing at 5 °C and 25 °C | | | | | | | | | |
| Acetic acid, glacial | - | - | - | 0.58 | - | - | - | - | - |
| Sodium Acetate | - | - | - | 0.04 | - | - | - | - | - |
| Citric acid, anhydrous | 1.82 | - | 1.07 | - | - | - | 1.92 | 1.92 | 1.92 |
| Sodium citrate, dihydrate | 0.15 | - | - | - | - | - | - | - | - |
| Glycine | - | - | - | - | 0.75 | - | - | - | - |
| Sodium dihydrogen phosphate, anhydrous | - | 1.2 | - | - | - | - | - | - | - |
| Disodium hydrogen | - | - | 0.63 | - | - | - | - | - | - |

(excerpt of Table 1)

According to Dr. Mosher, one of the two inventors of the '868 patent, formulations H1 and H7-H9 were prepared using a "citrate-based buffer." *Id.* (¶ 14 and Table 1). However, Dr. Mosher mentions that formulations H7-H9 used a "citrate-based buffer," that was "prepared with citric acid only (**no sodium citrate**)." (Appx236) (emphasis added). Because Dr. Mosher explicitly defines and treats the citrate buffer as not necessarily including sodium citrate, the patentee's understanding of "a citrate buffer" must mean that it only requires citric acid—not citric acid <u>and</u> sodium citrate as argued by plaintiffs.

### c)   The '868 patent claims' use of "citrate" buffer and the specification further demonstrate that sodium citrate is not necessarily included in a "citrate buffer."

Courts try to give meaning to all the terms in a claim and avoid "render[ing] the disputed claim language [as] mere surplusage. *Texas Instruments Inc. v. U.S. Intern. Trade Com'n*, 988 F.2d 1165, 1171 (Fed. Cir. 1993); *see also Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.").

The language of Claim 26 itself proves that the patentee understood "citrate buffer" to only necessarily comprise citric acid. If the patentee construed a "citrate buffer" to include both citric acid and sodium citrate, then it would have been unnecessary to clarify within the limitation that the citrate buffer comprises citric acid and sodium citrate. Otherwise, the claim limitation would be construed to read "a citrate buffer **comprising citric acid and sodium citrate** to maintain the pH about 4.5 or below **comprising citric acid and sodium citrate**." Such an interpretation would render the disputed language as "mere surplusage," as opposed to Alkem's construction that only citric acid is necessarily included in a "citrate buffer."

Alkem's proposal best comports with, not only the prosecution history and the actual claim itself, but also the '826 patent's other claims as well. Claim 5 of the '868 patent depends from claim 1 and includes the additional limitation: "wherein the buffer comprises a **citrate** [buffer] [or several other possible buffers]." (Appx27) (emphasis added). However, claim 6—also depending from claim 1—has the additional limitation: "wherein the buffer comprises **citric acid and sodium citrate**." (Appx27, 42:1-2) (emphasis added). This same claim drafting is repeated for claims 18 and 19 as well. (Appx27, 42:59-64). Here, the patentee's claiming proves it could not have understood "citrate buffer" to mean "a buffer comprising citric acid and sodium citrate," otherwise claims 5 and 6 (and 18 and 19) would be claiming the exact same thing, i.e. a "buffer comprising citric acid and sodium citrate." Therefore, "citrate buffer" cannot mean "a buffer comprising citric acid and sodium citrate" as suggested by plaintiff. Such an interpretation is illogical and incompatible with the canons of claim construction and patent examination. *See, e.g.*, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) ("Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims."); *Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1366 (Fed. Cir. 2000) ("Under the doctrine of claim differentiation, two claims of a patent are presumptively of different scope.") (citations omitted).

The specification further supports Alkem's construction. When listing the plethora of potential buffering agents, the patentee includes citric acid, and sodium citrate, among a myriad of other possibilities, but does not include "citrate" as a potential buffering agent. (Appx13, 13:23-45; Appx17, 21:11-30). It would be logical to include "citrate" as a buffer separate from both "citric acid" and "sodium citrate" if the patentee understood a citrate buffer to always refer to a buffer comprised of citric acid <u>and</u> sodium citrate. However, the patentee chose not to do so,

presumably because "citric acid" was already listed, which is how the patentee understood "citrate buffer" to be defined.

### 3.  Azurity's Reply Position

Alkem's construction, which substitutes "citric acid" for "a citrate buffer" cannot be correct at least because it expressly excludes the expressly claimed sodium citrate.  Alkem's arguments in support of this facially incorrect construction ignore both (i) significant portions of the intrinsic evidence, and (ii) the knowledge of a POSA regarding formation of a citrate buffer.

First, Alkem ignores a key part of Dr. Mosher's May 14, 2020 declaration.  Joint Br. at 38-39 (discussing Appx233-243 (Dr. Mosher's May 14, 2020 Declaration)).  This is fatal to Alkem's argument as during claim construction, terms must be construed in the context of the entire intrinsic record.  *Fenner Invs., Ltd. v. Cellco P'ship*, 778 F.3d 1320, 1323 (Fed. Cir. 2015).  Alkem argues that because formulations H7-H9 in Table 1 of Dr. Mosher's declaration contain only citric acid, the term "citrate buffer" should be construed to mean only buffers containing at least citric acid.  Joint Br. at 39.  This ignores the other formulation in Table 1 that also contains a "citrate-based" buffer—formulation H1.  Formulation H1 contains both citric acid and sodium citrate, thereby directly contradicting Alkem's understanding of the term "a citrate buffer":

| | Compositions (mg/mL) for Stability Testing at 5 °C and 25 °C | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Ingredients | H1 Citrate | H2 Phosphate | H3 Citrate/ Phosphate | H4 Acetate | H5 Glycine | H6 Tartrate | H7 Citrate | H8 Citrate | H9 Citrate |
| Acetic acid, glacial | - | - | - | 0.58 | - | - | - | - | - |
| Sodium Acetate | - | - | - | 0.04 | - | - | - | - | - |
| Citric acid, anhydrous | 1.82 | - | 1.07 | - | - | - | 1.92 | 1.92 | 1.92 |
| Sodium citrate, dihydrate | 0.15 | - | - | - | - | - | - | - | - |
| Glycine | - | - | - | - | 0.75 | - | - | - | - |
| Sodium dihydrogen phosphate, anhydrous | - | 1.2 | - | - | - | - | - | - | - |
| Disodium hydrogen | - | - | 0.63 | - | - | - | - | - | - |

Appx236 (Table 1, excerpted).  Additionally, as Alkem's brief points out, Dr. Mosher referred to the formulations in his declaration as containing a "citrate-*based* buffer," referring to the citrate

ion and not the component excipients.  Joint Br. at 38-39.  The full quote makes it clear that Dr.

Mosher referred to the citric acid/sodium citrate and citric acid only buffers interchangeably:

> Formulations H1 and H7-H9 contain citrate-based buffers.  Specifically,
> formulation H1 was prepared with citric acid and sodium citrate, and
> formulations H7-H9 were prepared with citric acid only (no sodium citrate)
> with the pH being adjusted with HCl or NaOH.

Appx236.  Thus, Alkem's construction limiting "a citrate buffer" to one that contains *only* citric

acid cannot be correct.

Second, Alkem's contention that the phrase "comprising citric acid and sodium citrate" in

the claim limitation acts as surplusage under Azurity's construction is wrong.[16]  Joint Br. at 39-40.

This phrase actually proves that a POSA would understand "a citrate buffer" by its plain and

ordinary meaning, which would include other chemical compounds that can create "a citrate

buffer."  Indeed, the Handbook of Pharmaceutical Excipients lists at least two citrate salts as

potential buffering agents—sodium citrate and potassium citrate.  Appx471-476.  Either of these

salts could be used in isolation with an acid to adjust the pH to the proper range or with citric acid

to create a suitable citrate buffer for the claimed formulation.  Appx236 (stating that H1 was

prepared with citric acid and sodium citrate and formulations H7-H9 were prepared with citric acid

only (no sodium citrate) with the pH being adjusted with HCl or NaOH).  A POSA would

understand that either of these could be used to create a citrate buffer.[17]  As a result, Azurity's

---

[16] Alkem cites *Texas Instruments* for this assertion.  988 F.2d 1165.  However, there the plaintiff
was attempting to argue that "the location for the injection of the plastic into the mold differs from
the location of the gate through which the plastic is injected."  *Id.* at 1171.  It was this attempt to
defy logic that caused the Court to find the plaintiff's construction would "render the dispute claim
language mere surplusage."  *Id.*  Such is not the case here.

[17] Alkem's statement that the specification did not include "citrate" as a buffer species separate
from citric acid and sodium citrate is perplexing, as a "citrate buffer" indicates that the buffer is
made of citrate ions, which may be added to the solution through a number of ways, including
citric acid, sodium citrate, and potassium citrate.

construction reflects the fact that the term "a citrate buffer" alone would not be read by a POSA to mean a buffer of only citric acid, of only sodium citrate, or of only citric acid and sodium citrate together.  Instead, a POSA would understand that it does not matter the ingredients added to the formulation—as long as ionized and unionized citric acid species are both in solution, a citrate buffer will be formed.  Appx484.  Therefore, Azurity respectfully asks the Court to adopt its construction of "a citrate buffer."

### 4.      Alkem's Sur-Reply Position

Azurity argues that Alkem ignores parts of Dr. Mosher's May 14, 2020 declaration, but Alkem's construction is the only one that accounts for the entire declaration. (Joint Brief at 41). Azurity agrees this is fatal to their argument because terms must be construed in the context of the entire intrinsic record. (Joint Brief at 41). Alkem does not ignore formulation H1 in Dr. Mosher's declaration, but instead compares the formulations of H1 and H7-H9 to demonstrate that "sodium citrate" is not required as part of the "citrate-based buffer" as stated by one of the co-inventors himself. (Joint Brief at 39).

Dr. Mosher's labeling H1 as well as H7-H9 as "citrate buffers," even though H7-H9 expressly exclude sodium citrate, proves Alkem's argument. Again, Azurity mischaracterizes Alkem's position and incorrectly asserts that Alkem's construction is that "'a citrate buffer'…contains *only* citric acid…" (Joint Brief at 42) (emphasis in original). Alkem is not arguing that *only* citric acid is present in a "citrate buffer," but instead that the patentee's definition of a "citrate buffer" only requires citric acid to meet the definition of a "citrate buffer," and sodium citrate is not necessarily included. (Joint Brief at 39).

Azurity next cites a pharmaceutical handbook to support their argument. However, this is extrinsic evidence, which is "less significant than the intrinsic record" and "less reliable than the patent and its prosecution history." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317-1318 (Fed. Cir.

2005) (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)). Even

if the Court considers Azurity's reference to the Handbook of Pharmaceutical Excipients, it does

not conflict with Alkem's construction. Azurity states that "at least two citrate salts" could be

potential buffering agents with citric acid to create a suitable citrate buffer. (Joint Brief at 42-43).

Alkem's position does not exclude the potential that other components could make up a citrate

buffer—it only asserts that sodium citrate need not be one of those components.

### D.    "A Mixture of Citric Acid and Sodium Citrate . . ."

| Disputed Claim Term | Azurity's Construction | Alkem's Construction |
|---|---|---|
| "*[a buffer comprising]* a mixture of citric acid and sodium citrate*[, wherein the buffer is present at a concentration between about 5 mM and about 20 mM in the oral liquid formulation]*" '482 patent, claims 1, 13, 14 | No construction needed. To the extent a construction is needed, plain and ordinary meaning. | "a combination of citric acid and sodium citrate distinct from the formulation's other components" |

### 1.    Azurity's Opening Position

Similar to Section III.C.1 *supra*, the language of the entire phrase from which this term is

derived provides meaning to the disputed term "a mixture of citric acid and sodium citrate" such

that no construction is required.  If required, then this term should be given its plain and ordinary

meaning.  For instance, the full claim limitation as in '482 patent, claim 14 is:

> 14.  An oral liquid formulation, comprising:
> . . .
> (ii) a buffer comprising *a mixture of citric acid and sodium citrate*, wherein
> the buffer is present at a concentration between about 5 mM and about 20 mM
> in the oral liquid formulation . . . .

Appx55.  Thus, the claims themselves lend sufficient meaning to both "mixture" and "a mixture

of citric acid and sodium citrate" such that no construction is needed.  "A mixture of citric acid

and sodium citrate" describes "a buffer."  Such "a buffer comprising a mixture of citric acid and

sodium citrate" has a concentration between about 5 mM and about 20 mM in the oral liquid formulation.

This meaning is supported by the intrinsic record.  Nothing in the specification suggests, let alone requires, that citric acid and sodium citrate be "*distinct* from the formulation's other components" as Alkem proposes.  Rather, the claim language specifies what the mixture is and the concentration thereof.  Thus, no further construction is necessary.

Likewise, nothing in the prosecution history explicitly or implicitly adds a limitation that the mixture of citric acid and sodium citrate must be "*distinct* from the formulation's other components," as Alkem proposes.  Thus, no construction is required, and if required, then the claim language should have its plain and ordinary meaning.  *Cf. Bristol-Myers Squibb Co. v. Aurobindo Pharma USA Inc.*, No. 17-374-LPS, 2018 WL 5077895, at *5-6 (D. Del. Oct. 18, 2018) (finding plain and ordinary meaning, *i.e.*, no construction necessary, for disputed term involving apixaban particles because nothing in intrinsic record required particle size to be measured one and only one way).

## 2.      Alkem's Answering Position

This claim term is found in claims 1, 13 and 14 of the '482 patent. See Section III.A.2 for this term in the context of the patents.

### a)      The citric acid and sodium citrate in the buffer are distinct from the formulation's other components.

Contrary to plaintiff's assertions, Alkem's proposed definition is supported by the intrinsic record and prosecution history. In a non-final rejection during prosecution of the '482 patent, the examiner rejected claims 1, 13, and 14 as indefinite in their proposed forms at the time. (Appx273) (discussing proposed claims 1, 17, and 18). The examiner writes:

> "Regarding the preservative, dependent claims 12 and 27 recite particular
> preservatives meeting the limitations, including citric acid. It is unclear if a single
> amount of citric acid in the composition would meet the requirements of both the

45

preservative and the buffer, as the buffer itself comprises citric acid…[i]n other words, **citric acid serves as both a component of the buffer system, as well as a preservative**." (Appx273, 275) (emphasis added).

In response to this rejection, the patentee amended the claims to specify the possible preservatives without including citric acid or sodium citrate. (Appx284-288). The claims were eventually amended again to narrow the potential preservatives even further. (Appx354-357). However, the examiner's statements make clear that the combination of citric acid and sodium citrate in the buffer must be distinct from any other components in the formulation. Otherwise, the claim would be indefinite as a POSA could not know whether a single amount of citric acid or sodium citrate that is not included as part of the buffer would meet the buffer limitation. (Appx273). Alkem's proposed construction simply clarifies, as the examiner required, that the use of citric acid or sodium citrate could not meet the buffer limitation unless it was included in the buffer itself.

### 3.     Azurity's Reply Position

Here, Alkem again attempts to assert the doctrine of prosecution disclaimer. *See* §§ III.A.1 and III.A.3, *supra*.   However, as with "a buffer," Alkem has not identified any "clear and unmistakable" disavowal necessary for prosecution disclaimer to attach. *MIT*, 839 F.3d at 1119. Furthermore, the focus of the inquiry as to whether prosecution disclaimer attaches is on the applicant, not the examiner, as "it is the applicant, not the examiner, who must give up or disclaim subject matter that would otherwise fall within the scope of the claims." *Sorensen v. ITC*, 427 F.3d 1375, 1379 (Fed. Cir. 2005).

Alkem's block quote insinuates that the phrase after the ellipses references the claimed formulation.  However, in the prosecution history, this phrase is actually in reference to prior art:

> As noted in the rejection, *supra*, claim 12 recites the use of citric acid as a preservative.  The ordinarily skilled artisan would thus recognize the buffer solution taught by Nahata to fulfill the requirements of both the buffer and the preservative.

> In other words, citric acid serves as both a component of the *buffer system*, as well as a preservative.

Appx275 (emphasis added) ('482 Patent, Jan. 25, 2019 Non-Final Office Action at 5). The Examiner is stating that within the formulation from Nahata, citric acid has a double duty as both a buffer and a preservative. Importantly, the Examiner never stated that "citric acid serves as both a component of the buffer system, as well as a preservative" in reference to the claimed formulation. In the office action, "buffer system" referred to the buffer system of the prior art Nahata. When referencing the claimed formulation, the Examiner only said that whether or not the citric acid was claimed as both a buffer and as a preservative was unclear.

Furthermore, even by the most generous reading, the prosecution history reflects that the citric acid is claimed as a buffer, and that there is a separate component in the formulation that is claimed as a preservative. Alkem argues a much narrower construction, one that requires some artificial separation of the claimed citric acid and sodium citrate from the other recited ingredients in the claimed liquid solution.[18] In the context of a liquid formulation, it is unclear how this would even be achieved. Azurity respectfully asks the court to adopt its construction, which is consistent with the intrinsic evidence.

### 4.   Alkem's Sur-Reply Position

Azurity admits in its reply that the examiner was unclear as to whether citric acid was claimed as both a buffer and a preservative. (Joint Brief at 47); (Appx273). In response to this rejection based on the failure to set forth the metes and bounds of the subject matter, the patentee amended the claims to clarify that citric acid was not included in the preservative. (Appx285-288). Because this was an amendment to overcome a rejection, it was a "clear disavowal of claim

---

[18] Again, it is not clear why Alkem is requesting that the Court adopt this strained claim interpretation given that ████████████████████████████████████

coverage." *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1327 (Fed. Cir. 2003). As such, Alkem's construction simply clarifies that the combination of citric acid and sodium citrate in the buffer is distinct from the preservative and other components of the formulation, as required by the examiner for allowance.

### E.   "Consisting Essentially Of"

| Disputed Claim Term | Azurity's Construction | Alkem's Construction |
|---|---|---|
| **"consisting essentially of"** <br> '868 patent, claims 1, 13, 14, 26; <br> '621 patent, claims 1, 19, 30 | Plain and ordinary meaning. | "including, exclusively," |

### 1.   Azurity's Opening Position

Alkem's proposed construction of "consisting essentially of" as "including, exclusively," in the '868 and '621 patents[19] is wrong as a matter of law.  The transitional phrase "consisting essentially of" has a specific meaning within patent law—it limits the scope of a claim to the specified materials or steps "and those that ***do not materially affect the basic and novel characteristics***" of the claimed invention.  *In re Herz*, 537 F.2d 549, 551-52 (C.C.P.A. 1976); *see also PPG Indus.*, 156 F.3d at 1354; *In re Hitachi Metals, Ltd.*, 603 F. App'x 976, 979-80 (Fed. Cir. 2015); MPEP, 9th ed. (2020), § 2111.03 ("Transitional Phrases").  Nothing in the claims themselves, the specification, or the prosecution history indicates any departure from the plain and ordinary meaning of "consisting essentially of."  In such instances, courts decline to invent a new meaning in lieu of the customary understanding of this term.  *E.g.*, *Mayne Pharma Int'l Pty Ltd. v. Merck & Co., Inc.*, No. 15-438-LPS, 2016 WL 7441069, at *4 (D. Del. Dec. 27, 2016), *aff'd sub nom. Mayne Pharma Int'l Pty. Ltd. v. Merck Sharp & Dohme Corp.*, 927 F.3d 1232 (Fed. Cir.

---

[19] Alkem did not identify claim 13 of the '482 patent, which claims "[a]n oral liquid formulation, ***consisting essentially of*** . . . ."  Appx55, '482 patent at 41:63-42:10.  Azurity therefore does not address "consisting essentially of" as used in '482 patent, claim 13, but reserves the right to address any arguments made by Alkem.

2019) ("The customary legal meaning of 'consisting essentially of' is 'necessarily includes the listed ingredients and is open to unlisted ingredients that do not materially affect the basic and novel characteristics of the invention.'"); *Unimed Pharm., LLC v. Perrigo Co.*, No. 13-236-RGA, 2015 WL 1094601, at *3 (D. Del. Mar. 11, 2015). Thus, applying Federal Circuit precedent and decisions from this District, "consisting essentially of" in the '868 and '621 patents should have its plain and ordinary meaning.

### 2.      Alkem's Answering Position

This term is found in claims 1, 13, 14, and 26 of the '868 patent and claims 1, 19, and 30 of the '621 patent. *See* §§ III.A.2 and III. C.2 for the terms in the context of the claim.

#### a)      The prosecution history of the patents-in-suit as a whole demonstrate the patentee's understanding of "consisting essentially of" to mean "including, exclusively."

As discussed above, during prosecution of the '868 and '621 patent, as well as the '008 parent patent, the patentee evidenced its understanding of what "consisting essentially of" means. *See* § III.A.2.a.i. The examiner issued a rejection of claims based on obviousness because the claimed ingredients and excipients were disclosed across several prior art references. (Appx117). The patentee, in its response, pointed out that "consists essentially of" was used as a transition phrase, and that none of the prior art references "teach or suggest the claimed combination of <u>only</u> enalapril, citric acid, sodium citrate, sodium benzoate, sucralose and water…" (Appx117) (emphasis in original). This argument to the examiner confirms the patentee used "consists essentially of" to include "only" the components claimed afterward.

This understanding is also noticed in the patents' common specification. The patentee specifically mentions that claims which use "comprising" are not limited to possessing only those elements and contemplates other unlisted elements. (Appx21, 29:35-42). By expressly categorizing claims with "comprising" in this manner, the patentee implies that any other

transitional phrase acts to limit the claims to only those elements listed. As such, Alkem's construction best comports with the patentee's understanding of this term and the patentee's exchanges with the patent office.

### 3. Azurity's Reply Position

Alkem does not cite a single case in support of its request to narrow the well understood, plain meaning of the transitional phrase "consisting essentially of." Rather, Alkem simply recaps its argument for "a buffer." Just as with "a buffer," in arguing for their narrowed construction of "consisting essentially of," Alkem ignores the considerable case law supporting Azurity's construction. *See* § III.A.3, *supra*. Also as with their argument for "a buffer," Alkem fails to meet the challenging standard of a "clear and unmistakable" disclaimer demanded by the doctrine of prosecution disclaimer. *See* § III.A.3.a, *supra*.

Alkem's only support for its construction is a selectively quoted portion of the prosecution history. In reality, the sentence immediately preceding that quoted by Alkem recites the MPEP definition:

> As noted in the MPEP, '[t]he transitional phrase "consisting essentially of" limits the scope of a claim to the specified materials or steps "and those that do not materially affect the basic and novel characteristic(s)" of the claimed invention. MPEP § 2111.03 (citing *In re Hertz*, 537 F.2d 549, 551-552 (CCPA 1976) (emphasis in original).

Appx117 (alterations in original). This MPEP definition reflects the plain meaning of "consisting essentially of" and not Alkem's unduly narrow construction. As a result, Azurity's construction of "consisting essentially of" should be adopted and the term should be construed by its plain and ordinary meaning, i.e., allowing for additional materials or steps that "do not materially affect the basic and novel characteristics" of the claimed invention. *Hitachi Metals*, 603 F. App'x, at 979-80. There is no support for Alkem's attempt to re-write this transitional phrase.

50

### 4.      Alkem's Sur-Reply Position

As mentioned in Alkem's answering brief, the patentee's understanding and use of "consisting essentially of" is discussed through Alkem's argument of the "a buffer" term. (Joint Brief at 49). Therefore, Azurity's assertion that Alkem cites no cases to support its position is incorrect. (Joint Brief at 50).

Azurity also references the MPEP definition of "consisting essentially of" and argues there is no support for Alkem's "attempt to re-write" the transitional phrase. (Joint Brief at 50). However, Alkem specifically addresses this definition in its discussion of "a buffer." (Joint Brief at 11). The prosecution history repeatedly emphasizes the limited number of ingredients in the claimed formulation and does so in the context of the "consisting essentially of" transition phrase as opposed to the "comprising" phrase. (Appx117, Appx122, Appx228-229). Indeed, the patentee, specifically amended the transition term from "comprising" to "consisting essentially of" to address the examiner's concern that there was no "explicit proviso which would exclude the use of additional components." (Appx228-229). As previously mentioned, Azurity has no explanation to counter this express surrender of additional ingredients.

## IV.      CONCLUSION

### A.      Azurity's Position

For the foregoing reasons, Azurity respectfully requests that the Court adopt its proposed constructions.

### B.      Alkem's Position

For the foregoing reasons, Alkem respectfully requests the Court adopt its proposed constructions.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Megan E. Dellinger*

---

Jack B. Blumenfeld (#1014)
Megan E. Dellinger (#5739)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mdellinger@morrisnichols.com

*Attorneys for Plaintiff Azurity Pharmaceuticals, Inc.*

OF COUNSEL:

Wendy L. Devine
Kristina M. Hanson
WILSON SONSINI GOODRICH & ROSATI
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA  94105
(415) 947-2000

Natalie J. Morgan
WILSON SONSINI GOODRICH & ROSATI
12235 El Camino Real, Suite 200
San Diego, CA  92130-3002
(858) 350-2300

August 9, 2021

MORRIS JAMES LLP

*/s/ Cortlan S. Hitch*

---

Kenneth L. Dorsney (#3726)
Cortlan S. Hitch (#6720)
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6800
kdorsney@morrisjames.com
chitch@morrisjames.com

*Attorneys for Defendant Alkem Laboratories Ltd.*

OF COUNSEL:

Timothy H. Kratz, Esquire
George J. Barry III, Esquire
KRATZ & BARRY, LLP
1050 Crown Pointe Parkway, Suite 500
Atlanta, GA  30338
(404) 431-6600